In re Barbara NELSON, a/k/a Barbara Kangas and Ronald Nelson, Debtor.

**ST. MARY'S MEDICAL CENTER, Plaintiff,**

v.

**Barbara NELSON, a/k/a Barbara Kangas and Ronald Nelson, Defendants.**

Bankruptcy No. 5–87–336. Adv. No. 5–88–4.

United States Bankruptcy Court, D. Minnesota, Fifth Division.

Nov. 17, 1988.

William D. Paul, Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, Minn., for plaintiff.

Mark A. Munger, MacDonald, Munger, Downs & Munger, Duluth, Minn., for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on September 15, 1988, for hearing on Plaintiff's motion for partial summary judgment and Defendants' responsive motion for full summary judgment. Plaintiff appeared by its attorney, William D. Paul. Defendants appeared by their attorney, Mark A. Munger. (All references to "Defendant" in the singular shall be to Barbara Nelson alone.) Upon the moving and responsive documents, the arguments of counsel, and the other files and records in this adversary proceeding, the Court grants Plaintiff's motion and denies Defendants' motion.

This is an adversary proceeding for determination of dischargeability under 11 U.S.C. § 523(a)(6). Plaintiff alleges that Defendant willfully and maliciously converted the proceeds of a settlement of a personal injury cause of action to which, it asserts, Plaintiff's statutory lien for hospital charges had attached previously. Plaintiff now moves for summary judgment on the issue of whether it held a valid and enforceable lien against the cause of action at relevant times. There is no genuine issue of material fact as to this single legal issue, and it is ripe for determination as a matter of law.

Defendant suffered severe back injuries in an automobile accident on or about January 2, 1983.[1] One Rock Frederick LaBounty was the other driver. LaBounty was insured by State Farm Insurance Company ("State Farm"). Defendant apparently was uninsured.

Defendant received medical care at Plaintiff's Duluth, Minnesota facility[2] on a number of occasions from 1983–6, incurring bills exceeding $30,300.00. Plaintiff has never received any payment on these bills.

After several of Defendant's hospitalizations, Plaintiff or BSBA executed five successive claims of hospital lien under MINN.STAT. § 514.68 and filed them with the clerk of the Minnesota State District

---

**1.** Plaintiff's complaint gives the date of the accident as January 22, 1983, in his memorandum supporting the present motion, its counsel gives the date as January 2, 1983. The discrepancy is not material.

**2.** The Benedictine Sisters Benevolent Association ("BSBA") operated St. Mary's Hospital before Plaintiff assumed that function, apparently at some point in 1985–86.

Court for the Sixth Judicial District. A summary of the filed claims is as follows:

| DATE OF EXECUTION | DATE OF FILING | DATES OF PROVISION OF CARE | CHARGES CLAIMED |
|---|---|---|---|
| 12/26/84 | 1/5/85 | 12/5—12/19/84 | $3,327.00 |
| 2/8/85 | 2/11/85 | 1/14—2/4/85 | $5,518.00 |
| 11/12/85 | 11/13/85 | 10/16—10/30/85 | $3,993.24 |
| 7/31/86 | 8/5/86 | 7/7—7/23/86 | $5,103.05 |
| 12/17/86 | 12/19/86 | 11/26—12/3/86 | $1,888.75 |

All of the claim forms included a blank for the listing of the person whom the injured party had alleged to be liable for the damages arising out of the injury. On the first and third claims, Plaintiff did not fill in this blank. On the second and fourth claims, Plaintiff listed Timothy N. Downs, Defendant's personal-injury counsel, in this blank. On the fifth claim, Plaintiff listed Downs and State Farm in the blank.

On or about October 20, 1983, Defendant served LaBounty with a summons and complaint in a personal injury action. State Farm afforded LaBounty a defense. The matter remained in suit until June, 1987. Defendant and LaBounty then entered into a stipulation for dismissal, which was duly approved by a July 13, 1987 order of the state trial court. Defendant released LaBounty and State Farm from all liability for payment of the sum of $20,000.00. Plaintiff did not receive any of the proceeds of settlement.[3]

Plaintiff did not commence suit in state court against Defendant, LaBounty, or LaBounty's insurer before Defendant consummated the settlement with LaBounty. After Defendant and/or her counsel advised Plaintiff's counsel that Plaintiff would not share in the settlement, Plaintiff commenced suit in state court against Defendant, LaBounty, and State Farm in late September, 1987. Debtors filed their Chapter 7 bankruptcy petition on October 1, 1987. Plaintiff then timely commenced this adversary proceeding.

The lien rights which Plaintiff asserts are a creature of Minnesota statute:

Any person, firm, or corporation operating a hospital in this state shall have a lien for the reasonable charges for hospital care of an injured person upon any and all causes of action accruing to the person to whom such care was furnished, ... on account of injuries giving rise to such causes of action and which necessitated such hospital care, subject, however, to any attorney's lien.

MINN.STAT. § 514.68. The perfection of this "hospital lien" is governed by MINN. STAT. § 514.69 subd. 1, which provides:

In order to perfect such lien, the operator of such hospital, before, or within ten days after, such person shall have been discharged therefrom, shall file in the office of the court administrator of the district court of the county in which such hospital shall be located a verified statement in writing setting forth the name and address of such patient, as it shall appear on the records of such hospital, the name of location of such hospital and the name and address of the operator thereof, the dates of admission to and discharge of such patient therefrom, the amount claimed to be due for such hospital care, and, to the best of claimant's knowledge, the names and addresses of all persons, firms, or corporations claimed by such injured person, ... to be liable for damages arising from such injuries; such claimant shall also, within one day after the filing of such claim or lien, mail a copy thereof, by certified mail, to each person, firm, or corporation so claimed to be liable for such damages to the address so given in such statement. *The filing of such claim or lien shall be notice thereof to all persons, firms, or corporations liable for such damages whether or not they are named in such claim or lien.*

(emphasis added). The final provision of the "hospital lien" statute grants certain procedural protections to the lienholder:

---

**3.** The parties dispute whether, and to what extent, Defendant and her personal-injury counsel involved Plaintiff in the main settlement negotiations and in negotiations for satisfaction of Plaintiff's claims against her. (Defendants now dispute the former point notwithstanding their admission—in response to Plaintiff's Request for Admissions—that Plaintiff "was not included in the settlement discussions" among Defendant, La Bounty, and State Farm.) These facts are not material to the legal issue presented on this motion.

No release of such causes of action, ... or of any judgment thereon shall be valid or effectual as against such lien unless such lienholder shall join therein, or execute a release of such lien, and the claimant ... may enforce such lien by action against the person, firm, or corporation liable for such damages ... If the claimant shall prevail on such action, the Court may allow reasonable attorneys' fees and disbursements. Such action shall be commenced with two years after the filing of such lien.

MINN.STAT. § 514.71.

Plaintiff argues that it complied with all of the provisions of MINN.STAT. §§ 514.69 and, as a result, it held valid, enforceable liens against Defendant's personal-injury cause of action at the time she settled her lawsuit and disposed of the settlement proceeds. Plaintiff's ultimate conclusion is correct, though it is not true that Plaintiff complied with every last statutory prerequisite for perfection. Because there is a paucity of reported caselaw construing the Minnesota hospital lien statute, a point-by-point analysis is appropriate.

■ First, it is clear that Plaintiff's liens attached to Defendant's cause of action as soon as Plaintiff rendered services to and for her. The language of MINN.STAT. § 514.68 plainly envisions that the act of rendering compensible hospital services creates the lien, and that the lien attaches to the patient's pre-existing cause of action upon creation, as the services are rendered.

■ Because Plaintiff's liens were created and attached to Defendant's cause of action, they were enforceable *as against her* notwithstanding any failure of perfection. *Compare Landmark v. Schaef-*

bauer, 41 B.R. 766, 768–9 (Bankr.D.Minn. 1984) (under Minnesota Recording Act, unrecorded but otherwise valid real estate mortgage is enforceable as between parties to the mortgage). Defendant is legally deemed to have consented to the creation and attachment of the liens, and the liens themselves are not defeated by the technical inadequacies of the lien statements. MINN.STAT. § 514.74 (inaccuracy in any particular of a lien statement required by c. 514 shall not affect the lien itself).[4] She is also deemed to be on notice of the liens, both by her implicit consent to their creation and by virtue of Plaintiff's public filing of them.

■ In the alternative, Defendant argues that "the liens filed on January 22, 1987 and February 11, 1985 ... are barred by the statute of limitations." The argument is somewhat imprecisely phrased, and may be taken as an assertion that Plaintiff's first two liens lapsed because Plaintiff failed to commence suit against LaBounty or State Farm within two years after the respective dates on which it filed the statements evidencing those liens.

This reasoning does not comport with the obvious statutory purpose of the "independent-suit" provision of MINN.STAT. § 514.71. The statute authorizes a hospital lienholder to commence independent suit against the party legally liable for the patient's injuries, essentially allowing it to sidestep the foreclosure proceeding which arguably would otherwise be the prerequisite for the exercise of the right to sue which the "owner" of the cause of action held. However, the statute does not by its terms divest the statutory lien against the primary cause of action if the lienholder

---

**4.** Even if the facial sufficiency of perfection were relevant to the validity of the liens against Defendant's rights in her cause of action, Defendant's argument would not prevail. The form of the lien statements, if not letter-perfect, was nonetheless sufficient to satisfy MINN. STAT. § 514.69 subd. 1 as a matter of law. The statements recited on their face the required information regarding Defendant, Plaintiff, and the dates and claimed value of the care provided. The fact that Plaintiff failed to identify, or ignorantly mis-identified, the party alleged to be liable for the damages is immaterial. *Ternes v.*

*Westberg,* 246 Minn. 485, 75 N.W.2d 415 (1956). Plaintiff filed them in the correct public office. The statute establishes that the mere filing in the office of the court administrator constituted notice to all liable persons whether they were named on the face of the statement or not. Further—and contrary to Defendants' argument—Plaintiff's failure to promptly serve a copy of each lien statement on the party alleged to be liable does not defeat the notice effected by the public filing. *Krause v. Merickel,* 344 N.W.2d 398, 401–02 (Minn.1984).

does not timely commence such a suit. The statute merely provides a procedure for the enforcement of the hospital lienholder's vested property right in the cause of action, which may be invoked if the patient (the "owner" of that cause of action) fails to promptly fix and liquidate his own rights in the cause of action. As an alternative, a hospital lienholder is free to await the patient's commencement of suit within two-, four-, or six-year statutes of limitations of MINN.STAT. §§ 541.05 and 541.07, and to assert its lien in the context of that action.[5]

The Legislature quite probably enacted MINN.STAT. § 514.71, at least in part, to address the situation presented here—where the amount of the hospital debt secured by the statutory lien so exceeds the dollar-value of the cause of acton that the right of action is overencumbered and the patient/injured party has much less incentive to pursue his claim for damages against the liable party. In such a situation, it can safely be said that the hospital is the real party-plaintiff to the personal-injury cause of action; it would have the predominant incentive to commence direct suit were it not satisfied by the patient's medical insurance, and were it also unable to satisfy its debt by direct recourse against the injured party's other assets and income. Situated solely as a lienholder, the hospital does not have an unfettered right to control the cause of action if it remains in the hands of the patient. It is logical to conclude that the Legislature enacted the independent-suit provision of MINN.STAT. § 514.71 to free the hospital lienholder from these legal constraints. The direct-action provision serves the goal of judicial economy and prevents prejudice to the rights of hospital lienholders, by obviating any need to formally foreclose a lien against the patient's cause of action before suing the liable party.[6]

■ Thus, Plaintiff's failure to timely commence direct suit against LaBounty and State Farm did not destroy its lienholder's rights under the first two lien statements. Plaintiff still held five valid and enforceable hospital liens against Defendant's cause of action in the spring and summer of 1987, when Defendant settled her lawsuit and disposed of the proceeds of settlement.[7]

■ Defendant's last relevant argument[8] is that her right under 11 U.S.C. § 522(d)(11)(D) to an exemption for her personal-injury cause of action prohibits Plaintiff from asserting the enforceability of its lien after bankruptcy. This argument ignores the sequence of relevant events, confuses the nature of exemption laws, and does not recognize relevant principles of

5. The statute could be read alternatively to authorize independent suit only after the parties to the primary cause of action settled their dispute without satisfying the hospital lien and obtaining a release thereof. This construction is not logical, however, as it would operate to prejudice the lienholder's rights where the litigants did not settle the primary cause of action until *after* the expiration of the two-year statutory period, without giving the lienholder any control over that settlement process.

6. It is by no means clear that the holder of a hospital lien *could* foreclose its lien. Neither the specific provisions of MINN.STAT. § 514.68–.72 nor the general provisions of MINN.STAT. § 514.73–.76 establish the right to, or procedure for, foreclosure of such a lien.

7. To be sure, this conclusion does not dispose of the question of whether Plaintiff holds five *fully-perfected* liens, as it appears from the record that Plaintiff filed a lien statement within the 10–day period prescribed by MINN.STAT. § 514.69 subd. 1 for only the second out of the five lien claims at issue here. The fact that it may hold only one properly-perfected lien claim only affects its independent claims under MINN.STAT. § 514.71 for wrongful release of settlement proceeds as against third parties, however. As noted *supra*, at p. 840, all of the liens were still enforceable as against Defendant notwithstanding failure of perfection for any reason, including timeliness of perfection as against third parties.

8. Defendant also argues that there are genuine issues of material fact as to whether she acted willfully and maliciously within the meaning of 11 U.S.C. § 523(a)(6), and whether her personal-injury counsel's fees had priority over Plaintiff's hospital liens by operation of MINN.STAT. § 514.68. The former issue is indeed one which is customarily reserved for full evidentiary development at trial—but it is not joined by Plaintiff's motion for *partial* summary judgment. To the extent that the latter issue involves a dispute of fact, it goes to the issue of damages—and, again, is outside the scope of Plaintiff's motion.

Minnesota and federal law relating to the attachment of liens to exempt property.

Defendant's personal-injury cause of action arose before the creation of Plaintiff's hospital liens. Minnesota statute provided an exemption from state-court collection process for that cause of action. *See* MINN.STAT. § 550.37 subd 22.[9] The hospital-lien statute caused the creation and attachment of Plaintiff's liens to that pre-existing cause of action, when and as Plaintiff rendered care to Defendant. Plaintiff can fairly be deemed to have consented to the creation and attachment of those liens, by the act of accepting the care which Plaintiff provided.

With one exception,[10] no provision of Minnesota state exemption law prohibits the consensual creation of liens against property which is statutorily exempt from collection process. The Minnesota courts have recognized that, in the absence of an express statutory prohibition, the exemption laws do not prevent the attachment of consensual security interests to property otherwise protected as exempt. *Moyer v. Int'l State Bank*, 404 N.W.2d 274, 276–77 (Minn.1987); *Georgens v. F.D.I.C.*, 406 N.W.2d 95, 98–9 (Minn.App.1987). Once attached, Plaintiff's liens encumbered the value of Defendant's cause of action. *As encumbered,* the cause of action would have passed into the bankruptcy estate had Defendant sought this Court's protection before she settled her lawsuit. The fact that Defendant could have exempted all or part of any unencumbered value in an unliquidated personal-injury cause of action from her bankruptcy estate is completely beside the point; here, there was no such exemptible "equity." Plaintiff's liens were not subject to avoidance under 11 U.S.C. § 524(f)[11] and, hence, would have survived bankruptcy in any event.

Plaintiff has, therefore, demonstrated that it held valid hospital liens against Defendant's cause of action at the times relevant to this dischargeability proceeding, which were fully enforceable against Defendant. It is entitled to partial summary judgment in its favor on this point.

■ Defendants have also moved for summary judgment in their favor, praying for a dismissal of Plaintiff's complaint. The motion is not supported by affidavits or deposition transcripts, and relies mainly on counsel's memorandum recitation of Defendants' version of the events through the state-court litigation to Defendants' bankruptcy filing. Assuming that this is a proper foundation for the motion, it only serves to underline the substantial and genuine issues of material fact as to Defendants' state of mind when they and their agents settled the litigation without obtaining Plaintiff's release, and when Defendants then spent the proceeds. Under established Eighth Circuit authority construing the "willfulness" and "malice" elements of 11 U.S.C. § 523(a)(6), this Court may consider both direct evidence of Defendants' subjective state of mind and evidence of the surrounding objective circumstances, and then may make appropriate inferences as to whether Defendants harbored the proscribed intent. *In re Long,* 774 F.2d 875 (8th Cir.1985). These determinations can be made only after full evidentiary development, with opportunity for cross-examination. This matter, therefore, must proceed to trial on the issue of whether Defendants acted willfully and maliciously in disposing of Plaintiff's secured rights.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiff's motion for partial summary judgment is granted.

---

**9.** The Minnesota personal-injury exemption statute has been held unconstitutional in part, under the rule of *In re Tveten,* 402 N.W.2d 551 (Minn.1987). *See In re Bailey,* 84 B.R. 608 (Bankr.D.Minn.1988) (O'Brien, J.).

**10.** that set forth in explicit fashion at MINN. STAT. § 550.37 subd. 4.

**11.** The liens were plainly "statutory liens" as defined under 11 U.S.C. § 101(47) and, hence, were not avoidable under either § 522(f)(1) or § 522(f)(2). Also, the encumbered asset did not fall within the narrower classes of otherwise-exempt property against which lien avoidance would lie under § 522(f). *In re Psick,* 61 B.R. 308, 313 (Bankr.D.Minn.1985).

2. That Defendants' motion for summary judgment is denied.

3. That, at all times on and after December 19, 1986, Plaintiff held five valid hospital liens under the provisions of MINN.STAT. §§ 514.68–.72, enforceable against Defendant Barbara Nelson and against her right of action against Rock LaBounty and State Farm Insurance Company, which secured a debt owing to Plaintiff by Defendant in the total sum of $19,825.04.

LET PARTIAL JUDGMENT BE ENTERED IN ACCORDANCE WITH TERM 3 OF THIS ORDER.