STATE OF MINNESOTA, DEPART-
MENT OF HUMAN SERVICES,
Respondent,

v.

David Ervin MOHS, d/b/a Dave's
Floor Sanding, Appellant,

and

Carol Jepson, Defendant.

No. C7–92–1555.

Court of Appeals of Minnesota.

Feb. 23, 1993.

Review Denied April 29, 1993.

Hubert H. Humphrey, III, Atty. Gen., LauraSue Schlatter, Sp. Asst. Atty. Gen., Saint Paul, for respondent.

Eric J. Magnuson, John M. Bjorkman, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Carol Jepson, pro se.

Considered and decided by AMUNDSON, P.J., and HUSPENI and SCHUMACHER, JJ.

OPINION

AMUNDSON, Judge.

David Mohs appeals from a summary judgment for the Department of Human Services. Mohs argues the district court erred by concluding the Department's medical assistance lien is enforceable against him, and that the Department should be awarded costs, including attorney fees. We agree and reverse.

## FACTS

On October 4, 1984, appellant David Mohs and defendant Carol Jepson were involved in an automobile accident. Mohs was driving, and Jepson was a passenger in Mohs' vehicle.

Jepson was injured in the accident, and required medical care. Because Jepson was an AFDC recipient, respondent Department of Human Services (Department) paid Jepson's medical bills pursuant to Minnesota's medical assistance program.

In May 1986, a Department representative wrote Jepson's attorney, requesting the names, addresses, and insurance policy numbers of all parties involved in the accident. Jepson's attorney did not respond to the Department's letter. In January 1987, the Department again mailed the letter to Jepson's attorney, but received no response.

In December 1987, the Department sent Jepson a medical assistance questionnaire, requesting information about the accident. The questionnaire asked Jepson to disclose whether any other payments had been made for her injuries, and whether she intended to bring legal action against anyone for the injuries. Jepson sent back the questionnaire, responding that she had received payments from an automobile insurance policy. Jepson did not indicate on the questionnaire whether or not she intended to pursue legal action for her injuries.

In March 1988, the Department mailed Jepson's attorney another letter requesting information about the accident. The letter stated: "Please advise the undersigned of the status of the above-referenced case." Jepson's attorney did not reply to this letter.

In June 1987, Jepson commenced a lawsuit against Mohs, seeking to recover damages for the injuries she had sustained as a result of the October 1984 accident. The parties agreed to a settlement on June 27, 1988, and Jepson signed a release on July 5, 1988, acknowledging receipt of payment in the amount of $45,000.00.

The following day, July 6, 1988, Jepson's attorney notified the Department of the settlement. On July 11, 1988, the Department executed a lien on Jepson's cause of action against Mohs. The lien was filed on July 18, 1988.

On July 26, 1988, Jepson's attorney filed with the district court a stipulation for dismissal of Jepson's action against Mohs. Pursuant to that stipulation, the court ordered Jepson's action dismissed with prejudice.

In June 1989, the Department commenced the present lawsuit against Jepson and Mohs, seeking to recover reimbursement for the medical assistance benefits paid to Jepson as a result of the accident. The Department obtained a default judgment against Jepson, and brought a motion for summary judgment against Mohs. The court granted the Department's motion. Mohs has appealed from the judgment and amended judgment.

## ISSUES

1. Did the district court err by determining that the Department timely perfected its lien on Jepson's cause of action against Mohs?

2. Did the district court err by awarding attorney fees and costs to the Department?

## ANALYSIS

### I.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." Minn. R.Civ.P. 56.03.

The parties' dispute focuses on the following statute, titled "Third Party Liability":

Subdivision 1. When the state agency provides, pays for or becomes liable for medical care, it shall have a lien for the cost of the care upon any and all causes of action which accrue to the person to whom the care was furnished, or to the person's legal representatives, as a result of the injuries which necessitated the medical care.

Subd. 2. **Lien enforcement.** The state may perfect and enforce its lien by following the procedures set forth in sections 514.69, 514.70 and 514.71, and its verified lien statement shall be filed with the appropriate court administrator in the county of financial responsibility. * * * The state agency is not subject to any limitations period referred to in section 514.69 or 514.71 and has one year from the date notice is received by it under subdivision 4, paragraph (c), or one year from the date medical bills are first paid by the state agency, whichever is later, to file its verified lien statement. The state agency may commence an action to enforce the lien within one year of (1) the date the notice required by subdivision 4, paragraph (c), is received or (2) the date the recipient's cause of action is concluded by judgment, award, settlement, or otherwise, whichever is later.

\*       \*       \*       \*       \*       \*

Subd. 4. **Notice.** The state agency must be given notice of monetary claims against a person, firm, or corporation that may be liable to pay part or all of the cost of medical care when the state agency has paid or become liable for the cost of that care. Notice must be given as follows:

(a) Applicants for medical assistance shall notify the state or local agency of any possible claims when they submit the application. Recipients of medical assistance shall notify the state or local agency of any possible claims when those claims arise.

(b) A person providing medical care services to a recipient of medical assistance shall notify the state agency when the person has reason to believe that a third party may be liable for payment of the cost of medical care.

(c) A person who is a party to a claim upon which the state agency may be entitled to a lien under this section shall notify the state agency of its potential lien claim before filing a claim, commencing an action, or negotiating a settlement.

\*       \*       \*       \*       \*       \*

Subd. 5. **Costs deducted.** Upon any judgment, award, or settlement of a cause of action, or any part of it, upon which the state agency has filed its lien, * * * reasonable costs of collection, including attorney fees, must be deducted first. The full amount of medical assistance paid to or on behalf of the person as a result of the injury must be deducted next, and paid to the state agency. The rest must be paid to the medical assistance recipient or other plaintiff. The plaintiff, however, must receive at least one-third of the net recovery after attorney fees and other collection costs.

Minn.Stat. § 256B.042 (1990).

Applying section 256B.042, the district court concluded the Department's lien was properly perfected. We disagree.

■ "Interpretation of Minn.Stat. § 256B.042 (Supp.1987) is a legal question." *Dixon v. Johnson,* 430 N.W.2d 253, 255 (Minn.App.1988). "Lien statutes are remedial in nature, and we have liberally construed them to do 'substantial justice between the parties.'" *Krause v. Merickel,* 344 N.W.2d 398, 402 (Minn.1984) (quoting *Atlas Lumber Co. v. Dupuis,* 125 Minn. 45, 48, 145 N.W. 620, 621–22 (1914)). However, there exists a "well-recognized rule requiring courts to refrain from interpreting public assistance statutes in a manner contrary to their plain meaning." *Dixon,* 430 N.W.2d at 255–56.

■ Minn.Stat. § 256B.042 requires the Department to file its lien statement either one year after medical bills are first paid, or "one year from the date notice is received by [the Department] under subdivision 4, paragraph (c)", whichever is later.

Section 256B.042, subdivision 4, paragraph (c) provides:

*A person who is a party to a claim upon which the [Department] may be entitled to a lien under this section shall notify the [Department] of its potential lien claim * * *.*

(Emphasis added.) Although Mohs was a party to Jepson's lawsuit, he argues that he had no duty to notify the Department pursuant to this provision, because prior to

the settlement he did not know or have reason to know the Department had a potential lien claim. The district court apparently believed that Mohs, as well as Jepson, had a duty to inform the Department of the lawsuit before it was settled.

We conclude the legislature intended that only recipients of medical assistance, and not third-party tort-feasors, have a duty under subdivision 4, paragraph (c) to notify the Department of its potential lien claim. *See* Minn.Stat: § 645.16 (1990) ("object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature").

■ Our conclusion is supported by the fact that, prior to the settlement, Mohs had no notice of the Department's lien. Where a lien is not properly perfected, the lien is not enforceable against a third party. *See, e.g., In re Nelson*, 92 B.R. 837, 841, n. 7 (Bankr.D.Minn.1988) (despite failure of perfection, hospital's liens were enforceable against patient herself; however, improperly-perfected liens affected hospital's independent claims against third parties for wrongful release of settlement proceeds); *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901, 905 (1991) ("[t]he hospital's lien is enforceable as against the injured party upon attachment, regardless of whether the hospital complies with the statute's notice provisions. Perfection, on the other hand, is required if the hospital seeks to enforce the lien against third parties, such as the tort-feasor") (emphasis deleted) (citing *Nelson*, 92 B.R. 837); *Rolla Community Hosp. v. Dunseith Community Nursing Home, Inc.*, 354 N.W.2d 643, 650 (N.D.1984) (purpose of recording a lien is to give constructive notice of lien to all persons, although actual notice accomplishes same purpose and overrides need for constructive notice).

■ The language of subdivision 4, paragraph (c) indicates that a party must provide notice to the Department *"before* filing a claim, commencing an action, or negotiating a settlement." (Emphasis added.) Jepson did not provide this notice. Rather, the Department was notified of Jepson's action against Mohs *after* the settlement

was finalized. This notice to the Department after the settlement was finalized was insufficient to commence the running of the one-year period. Since no notice was provided pursuant to the specific terms of subdivision 4, paragraph (c), that provision is inapplicable. Accordingly, the one-year period commenced when the medical bills were first paid by the Department.

It is undisputed that the Department first paid Jepson's medical bills in 1984, but did not file its lien until July 1988. Under this provision, the Department's lien was untimely.

## II.

Minn.Stat. § 514.71 (1990) provides:

If the [Department] shall prevail in such action [to enforce its lien], the court may allow reasonable attorneys' fees and disbursements.

In light of our decision reversing the trial court on the merits, the Department is no longer the "prevailing" party. We therefore reverse the district court's award of attorney fees to the Department. We also deny the Department's request for attorney fees on appeal.

## DECISION

Mohs had no duty under Minn.Stat. § 256B.042, subd. 4(c) to notify the Department of its potential medical assistance lien claim. Jepson's notice to the Department was insufficient under section 256B.042, subdivision 4(c) to commence the one-year limitations period. The Department untimely filed its lien more than one year after it first paid Jepson's medical bills.

Reversed.