Joan MARTIN, guardian ad litem for Troy HOFF, Petitioner, Appellant,

and

State of Minnesota, plaintiff on impleader, Respondent,

v.

CITY OF ROCHESTER, et al., Defendants.

No. C3–00–398.

Supreme Court of Minnesota.

March 21, 2002.

Rehearing Denied April 23, 2002.

Charles A. Bird, Rochester, James A. Koby, Parke O'Flaherty, La Crosse, WI, for petitioner.

Mike Hatch, Minnesota Attorney General, Suzette C. Schommer, Assistant Attorney General, St. Paul, for respondent.

Sonia Crannage, Burchetta Collins & Hanley, Pomona, NY, Attorneys for amicus curiae ARC MN, Inc. and NYSARC.

Michael A. Bryant, Bradshaw & Bryant, Waite Park, for amicus curiae MTLA.

## OPINION

PAUL H. ANDERSON, Justice.

Joan E. Martin settled a personal injury cause of action against multiple defendants on behalf of her disabled son, Troy Hoff. The state asserted a medical assistance lien against the proceeds as reimbursement for Hoff's medical expenses paid by the state through medical assistance. The state also asserted a subrogation right to the proceeds. The district court dismissed the state's claim to the proceeds, finding that the state medical assistance lien and subrogation provisions were preempted by federal law. The state appealed to the Minnesota Court of Appeals, which reversed the district court, holding that federal law did not preempt the state's lien and subrogation rights. Martin appealed to this court. We reverse.

Troy Hoff and Donald Tlougan were involved in a single-car accident on July 10, 1991, near Rochester, Minnesota. Tlougan died as a result of the accident. Hoff suffered permanent and totally dis-

abling injuries and was rendered mentally incompetent.

Hoff's mother, Joan E. Martin, sought medical assistance from the State of Minnesota on Hoff's behalf. The state began making medical assistance payments for Hoff's care on November 25, 1991. About a year and a half later, on May 23, 1993, Martin assigned to the state all of Hoff's rights to payment for medical care from any third party liable for Hoff's injuries. Martin made the assignment as Hoff's authorized representative.[1]

The state filed a public assistance lien in the Olmsted County Recorder's Office on June 21, 1993. The lien was specifically placed upon Hoff's causes of action arising out of the accident. This lien was for $267,754.50 of past medical assistance benefits paid on Hoff's behalf, and also included any future medical assistance benefits to be paid as a consequence of the accident.

Martin, as guardian ad litem for Hoff, sued Tlougan's estate, the City of Rochester, Rochester Township, and the County of Olmsted.[2] Martin sought recovery for past and future expenses for medical care and treatment, past and future pain and suffering, disability, disfigurement, past loss of earnings, loss of earning capacity, and other general and specific damages. Martin joined the state as an involuntary plaintiff on impleader, alleging that, as a result of the state's medical assistance lien, the state's presence was necessary for a "just adjudication of all rights." As a result of joining the state as a plaintiff on

impleader, Martin was able to plead a claim on behalf of the state alleging that the defendants were liable to the state for past and future expenses for medical care, treatment, sheltered living, and other general and specific damages.

After being joined as a plaintiff on impleader, the state filed an answer and cross-claims against Martin. In its answer, the state specifically denied Martin's characterization of the state as an appropriately named plaintiff and alleged that "as a lienholder on the present cause of action," it did not need to be named as a plaintiff on the pleadings. Instead, the state, in its cross-claim against Martin, relied on its lien rights under Minn.Stat. § 256B.042, subd. 1 (2000), claiming the right to reimbursement for medical expenses it paid on Hoff's behalf from any judgment, award, or settlement of Hoff's causes of action.[3] After filing its answer and cross-claims, the state was not significantly involved in the litigation and did not independently pursue its claim against defendants for medical expenses as pleaded by Martin on its behalf.

Nearly 6 years after commencing this action, Martin negotiated settlements with the defendants, first with the City of Rochester and then with Tlougan's estate and Rochester Township. The combined total of the settlements was $220,000. The settlement agreements encompassed all causes of action and claims.

The district court explicitly stated in its orders approving these settlement agree-

---

1. It is unclear from the record what legal authority Martin had to make this assignment for Hoff. Nevertheless, for purposes of this appeal, it is undisputed that Martin made a valid assignment of Hoff's rights.

2. Martin subsequently dismissed her action against the County of Olmsted.

3. The state also pleaded a second cross-claim, relying on the assignment of rights provision in the medical assistance application. However, this cross-claim only attempted to recover the no-fault insurance proceeds from Tlougan's no-fault insurer. Martin and the state later reached a settlement regarding the state's claim to the no-fault proceeds.

ments that it was aware of the nature and extent of Hoff's injuries, the damages claimed, the respective positions of the parties regarding liability, and the consequences of further litigation between the parties. The court found that the settlements were fair, just, and in the best interests of Hoff. The court also stated that it was aware of a dispute between Martin and the state regarding the state's claim to part of the settlement proceeds. However, the court concluded that this dispute did not involve the settlements directly and only concerned the eventual disbursement of the balance of the settlement proceeds. The court concluded that the dispute between Martin and the state should not delay the settlement with the defendants and that the interests of Martin and the state in the settlement proceeds could be protected by depositing the balance of the proceeds in an interest-bearing account with the court administrator. In compliance with the order of the court approving each settlement, Martin and the state released all three defendants from further liability and stipulated to a dismissal with prejudice on their claims. It is unclear from the record what claims were part of the settlement and how, if at all, the settlement proceeds were allocated among the respective claims.

After the settlements with the three defendants had been agreed upon, Martin and the state pursued their separate dispute regarding the state's cross-claim.[4] Specifically, the state asserted that its

medical assistance lien entitled it to obtain out of the remaining settlement proceeds $58,561.82 as reimbursement for the over $600,000 it had paid by that time for Hoff's medical care.[5]

Martin filed a motion to dismiss the state's claim, arguing that federal law prohibited the state from placing a lien on a medical assistance recipient's property. Martin argued that the settlement proceeds were solely Hoff's property because the assignment to the state of Hoff's rights to medical expenses left Martin with no power to collect or sue for medical expenses on Hoff's behalf. Therefore, Martin asserted that the settlement proceeds were solely Hoff's property because the settlement was made only on Hoff's remaining personal injury claims, i.e., damages for pain and suffering, disfigurement, disability, emotional distress, loss of earnings, and loss of earning capacity, but not medical expenses.

In response to Martin's motion, the state argued (1) that the federal anti-lien statute does not apply to third-party recoveries, (2) that the lien does not attach to the cause of action but instead to the proceeds, and (3) that proceeds are the property of the liable third parties. Additionally, the state contested Martin's argument on the effect of the assignment, arguing that the assignment did not deprive Martin of the ability to sue and collect for medical expenses. The state asserted that the assignment left both Martin and the state

---

4. Martin filed a motion to dismiss the state's cross-claim after the settlement with the City of Rochester had been approved, but before the settlement with Rochester Township and the estate of Donald Tlougan had been approved by the court, although it appears that a dollar amount had been agreed upon.

5. Although the state had paid over $600,000 for Hoff's medical care, the state only sought to recover $58,561.82 of the settlement pro-

ceeds. State law requires that reasonable costs of collection, including attorney fees, be deducted first from a Medicaid recipient's recovery and the full amount of medical assistance paid to the recipient be deducted second. Minn.Stat. § 256B.042, subd. 5 (2000). In any case, under Minnesota's third-party recovery system, the recipient must receive at least one-third of the net recovery after attorney fees and other collection costs. *Id.*

with the ability to pursue a recovery of medical expenses. Therefore, the state argues, the settlement included a recovery for medical expenses. Moreover, in its argument to the district court, the state did not assert that part of the settlement included the state's independent claim as pleaded by Martin. At this point in the proceedings, the state for the first time raised a subrogation claim under Minn. Stat. § 256B.37 (2000) for the medical assistance paid.

The district court granted Martin's motion to dismiss the state's claim to any of the settlement proceeds. The court found that, as a result of the assignment in the medical assistance application, neither Martin nor Hoff had any right to recover medical expenses from the defendants. The court then found that the settlement proceeds were Hoff's sole and exclusive property. The court further found that, because federal law bars imposition of a lien on any of Hoff's property during his lifetime and state lien laws permit a lien against Hoff's property, state lien laws conflicted with federal laws and thus were preempted. The court also rejected the state's subrogation claim on the grounds it was also prohibited by the federal anti-lien statute and because it was not timely asserted.

Although the foregoing proceedings were at times confusing, the final outcome in the district court can best be summarized as follows. The court found that Hoff's right to recover medical expenses was completely assigned to the state, leaving Martin, as Hoff's guardian, with no right to collect for medical expenses. Hoff's remaining rights to recover included all of his claims for personal injury damages except for medical expenses. Martin

settled all of Hoff's remaining claims arising out of the accident against the three defendants for $220,000. The state released the three defendants from further liability for its claims, apparently relying only on its lien and subrogation rights to recover medical expenses paid on Hoff's behalf. The court then found that the state was not entitled to any of the settlement funds. The court concluded that the state's lien and subrogation rights were preempted by federal law.

The combined result of the settlement agreements, releases, and the district court's order left the state without the ability to recover its medical expenses paid on Hoff's behalf. That is to say, the state could not collect anything, either directly through a cause of action against the defendants or indirectly through the use of liens or subrogation against the settlement proceeds.[6]

The state appealed, arguing that the federal anti-lien provision preempts neither the state's medical assistance lien statute nor the state's subrogation statute. The court of appeals agreed with the state and reversed the district court, concluding that Minnesota's medical assistance statute does not conflict with the federal Medicaid statutory scheme because compliance with both the state and federal provisions was possible. The court of appeals concluded that federal law therefore did not bar the state from placing a lien on the settlement proceeds. The court of appeals also concluded that the third-party settlement was subject to the state's subrogation claim. Martin then appealed to this court.

I.

This case presents three legal questions. The questions are whether

---

6. The state is also prohibited from suing a medical assistance recipient directly. *See* 42 U.S.C. § 1396p(b)(1) (1994).

Minnesota's medical assistance lien, assignment, and subrogation statutes are preempted by the federal anti-lien statute. Whether federal law preempts state law is generally an issue of statutory construction. *Pikop v. Burlington N.R.R. Co.*, 390 N.W.2d 743, 748 (1986). Statutory construction is reviewed de novo. *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000).

A. *Statutory Background*

For an understanding of the legal issues in this case, it is first necessary to understand the relevant Medicaid statutes. Medicaid, enacted in 1965 as Title XIX of the Social Security Act, is a publicly funded program to ensure medical care to certain individuals who lack the resources to cover the costs of essential medical services. 42 C.F.R. § 430.0; *see Norwest Bank of N.D., N.A. v. Doth*, 159 F.3d 328, 331 (8th Cir.1998). Medicaid was intended to be the payor of last resort. *See* H.R. Conf. Report No. 99–453, at 542 (1985). Medicaid is jointly funded by the federal and state governments. 42 C.F.R. § 430.0. Each state administers its own program within federally mandated requirements. *Id.* On the federal level, the Health Care Financing Administration (HCFA) is responsible for administering the Medicaid program.

The focus of our analysis is on the relationship between federal and state laws addressing the government's right to recover funds it has expended for medical care under the Medicaid program. The most relevant federal statute is an anti-lien provision prohibiting states from imposing a lien on property of a Medicaid recipient because of medical assistance paid. 42 U.S.C. § 1396p(a)(1) (1994) ("[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid * * *."). Despite this federal prohibition, a Minnesota statute grants to the state lien rights for the cost of care arising from the injuries which lead to the need for medical assistance. Minn.Stat. § 256B.042, subd. 1 (2000). More specifically, the Minnesota statute provides in relevant part:

> When the state agency provides, pays for, or becomes liable for medical care, it shall have a lien for the cost of the care upon *any and all causes of action* or recovery rights under any policy, plan, or contract providing benefits for health care or injury, which accrue to the person to whom the care was furnished, or to the person's legal representatives, as a result of the illness or injuries which necessitated the medical care.

*Id.* (emphasis added). The statute specifically directs that a lien be placed on a cause of action or recovery rights. A cause of action, often referred to as a claim, is "[a] group of operative facts giving rise to one or more bases for suing" or "[the] legal theory of a lawsuit." Black's Law Dictionary 214 (7th ed.1999).[7] Under Minnesota law, a cause of action is personal property.[8] *See State v. Royal Mineral Ass'n*, 132 Minn. 232, 236, 156 N.W. 128, 130 (1916) ("[T]he term 'credits,' as used in the taxing statutes, embraces only choses in action which are in their nature personal property."); *Mattson v. Minnesota & N. Wis. R.R.*, 95 Minn. 477, 488, 104 N.W. 443, 448 (1905) (holding that the right to

---

7. *See also* A Dictionary of Modern Legal Usage 140 (Bryan A. Garner ed., 2d ed.1995) (defining cause of action as "a group of operative facts, such as a harmful act, giving rise to one or more rights of action").

8. For purposes of the anti-lien provision, HCFA defines property as "the homestead and all other personal and real property in which the recipient has a legal interest." 42 C.F.R. § 433.36(b).

pursue damages for personal injuries is a property right); *see also* Minn.Stat. § 550.37, subd. 22 (2000) (listing "[r]ights of action for injuries to the person" as exempt property).

In addition to the anti-lien provision, federal law also mandates that a state's medical assistance plan require that medical assistance recipients assign to the state the right to receive payments for medical expenses from third parties liable for payment of those expenses. 42 U.S.C. § 1396k(a) (1994).[9] Minnesota's medical assistance plan includes such an assignment requirement, although it arguably requires assignment of more rights than the federal provision. Minn.Stat. § 256B.056, subd. 6 (2000).[10]

It is apparent that there is a conflict between the state lien and assignment provisions and the federal requirements. Despite the federal anti-lien provision, state law gives the state a lien on a medical assistance recipient's causes of action and recovery rights. Also, despite the limited scope of the federal assignment of rights

requirement, state law can be read to require that medical assistance recipients, as a condition of eligibility, assign to the state more rights than the federal provision requires. *Compare* 42 U.S.C. § 1396k *with* Minn.Stat. § 256B.056, subd. 6. In addition, the state is subrogated to any rights under a recipient's cause of action arising out of an occurrence necessitating medical assistance—although, at first glance, this subrogation provision does not run afoul of any federal restrictions. Minn.Stat. § 256B.37, subd. 1 (2000).

B. *Preemption*

■■■ Because of the conflict between the federal and state provisions, we must answer the question whether the federal provisions supersede the state statutes. To do so, we need to examine the law of federal preemption. There are three distinct situations in which federal law preempts and invalidates state law. *Pikop*, 390 N.W.2d at 748. First, state law is preempted when Congress explicitly states that the federal scheme preempts any

---

**9.** The federal assignment requirement reads as follows:

> (a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—
> (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—
> (A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.

42 U.S.C. § 1396k(a).

**10.** The state assignment provision reads as follows:

> To be eligible for medical assistance a person must have applied or must agree to apply all proceeds received or receivable by the person or the person's spouse from any third person liable for the costs of medical care for the person, the spouse, and children. The state agency shall require from any applicant or recipient of medical assistance the assignment of any rights to medical support and third party payments. * * * By signing an application for medical assistance, a person assigns to the department of human services all rights the person may have to medical support or payments for medical expenses from any other person or entity on their own or their dependent's behalf and agrees to cooperate with the state in * * * obtaining third party payments.

Minn.Stat. § 256B.056, subd. 6.

state action in the field. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). The second arises when Congress implicitly preempts state involvement in a particular field of law because the scope of federal involvement or interest is so extensive that it fully "occupies the field." *See, e.g., Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). The final type of preemption, "conflict preemption," takes two forms and arises when state law conflicts with federal law, either because compliance with both federal and state law is impossible or because the state law is an obstacle to the accomplishment of the purposes of the federal scheme. *See Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Preemption of state laws is generally disfavored. *See Cipollone*, 505 U.S. at 516, 518, 112 S.Ct. 2608; *Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655, 658 (Minn.1989). When federal laws do preempt conflicting state laws, the state laws are preempted only to the extent that they are in conflict with federal law. *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 476, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996); *De Canas v. Bica*, 424 U.S. 351, 357–58 n. 5, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976); *Forster*, 437 N.W.2d at 658.

■ Congress specifically permits state action regarding Medicaid; in fact, it requires that a participating state's Medicaid plan conform to federal requirements. *Schweiker v. Gray Panthers*, 453 U.S. 34, 37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981);

*see also* 42 U.S.C. § 1396a(a) (1994 & Supp. V 1999). Thus, there is no explicit or implicit federal preemption of the field. Instead, the conflict between the federal and state provisions requires a determination that preemption will apply here only if state law conflicts with specific federal Medicaid law or is an obstacle to federal Medicaid purposes. To make this determination, we first must compare the federal anti-lien provision with the state lien provision, then compare the federal and state assignment provisions with each other, and, finally, compare the federal anti-lien and state assignment provisions. Before making such comparisons, it is important to have a more complete description of the federal Medicaid scheme.

### 1. *The Federal Law*

The federal anti-lien provision ensures that property of a Medicaid recipient not be depleted during his life by a state seeking reimbursement for medical assistance paid. At the same time, the federal assignment and third-party recovery provisions enable a state to recover, to the extent of third-party liability, amounts the state has paid on behalf of Medicaid recipients. These provisions may be in conflict; therefore, our first step is to examine and seek to harmonize the federal law.

■ Fundamental principles of statutory construction require that courts give effect to the plain meaning of a statute when the language is clear. *See, e.g., Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also* Minn.Stat. § 645.16 (2000); *Correll v. Distinctive Dental Servs., P.A.*, 607 N.W.2d 440, 445 (Minn.2000). The state argues that the federal anti-lien provision clearly does not apply to third-party recoveries. Alternatively, the state argues that if we conclude the anti-lien provision is ambiguous, we should defer to clarifying

agency interpretations under the doctrine articulated in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But we conclude the federal anti-lien provision is unambiguous. It unequivocally provides that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid * * *." 42 U.S.C. § 1396p(a)(1).[11] Further, there is no indication in the statute's language that this anti-lien provision does not apply to third-party recoveries. The provision means exactly what it says—prior to his death, no lien may be placed on the property of a medical assistance recipient for recovery of medical assistance paid. Therefore, we will give effect to the plain meaning of the federal anti-lien provision.[12]

 We read and construe a statute as a whole and "interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Schroedl*, 616 N.W.2d at 277; *see also United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). Further, we are required, when possible, to give effect to all of a law's provisions. *See Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001); *see also* Minn.Stat. § 645.16. We are mindful of these requirements as we next seek to harmonize the plain meaning of the anti-lien provision with other federal provisions.

There are two other significant federal Medicaid requirements regarding a state's ability to recover medical assistance paid that must be construed in concert with our interpretation of the anti-lien provision. The first of these is the federal law that requires states to obtain from recipients, as a condition of eligibility for medical assistance, an assignment of rights to payment for medical care. 42 U.S.C. § 1396k. The specific provision requires a medical assistance recipient to "assign the State any rights, of the individual * * * to payment *for medical care* from any third party." 42 U.S.C. § 1396k (emphasis added). The second requirement directs states to recover the cost of care from potentially liable third parties. *See* 42 U.S.C. 1396a(a)(25)(H) (Supp. V 1999). The third-party recovery provision provides

> that to the extent that payment has been made under the State plan *for medical assistance* in any case where a third party has a legal liability to make payment *for such assistance*, the State has in effect laws under which, to the extent that payment has been made under the State plan *for medical assistance for health care items or services* furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party *for such health care items or services.*

42 U.S.C. 1396a(a)(25)(H) (emphasis added).

 Both of these provisions specifically refer to payments for medical or health

---

11. There are several exceptions, none of which apply to these facts. *See, e.g.*, 42 U.S.C. § 1396p(a)(1)(A), (B).

12. The dissent claims that by looking first and foremost at the anti-lien provision instead of construing all provisions together, we overlook a construction that avoids preemption. However, given its broad scope and plain language, the federal anti-lien statute is and must be the beginning point of our analysis. There is little ambiguity about "[n]o lien may be imposed." Further, we thoroughly consider and give effect to limitations in companion provisions regarding payment for "health care" and "medical care" and the nature of the property assigned. We must give effect to the statute as a whole, but cannot ignore the plain import of the broad anti-lien provision.

care. The required assignment of rights under federal law is for payment from any third party *for medical care* only. Similarly, a state's right to recover from third parties is specifically limited under federal law to payment *for health care items or services* only.[13] Thus, federal law requires a state to obtain an assignment of rights from the medical assistance recipient, but only for payments for medical or health care expenses.

■ The right assigned to the state is the medical assistance recipient's right to recover medical expenses from third parties liable for payment of those expenses.[14] An assignment generally operates to transfer all rights possessed by the assignor and the assignor retains no interest in the right transferred. *Marquette Appliances, Inc. v. Econ. Food Plan, Inc.*, 256 Minn. 169, 173, 97 N.W.2d 652, 655 (1959). By assigning the right to recover medical expenses, the Medicaid recipient no longer owns that right of recovery, i.e., the right is no longer the property of the recipient. Therefore, state enforcement of the assignment for medical expenses does not violate the anti-lien provision because recovery under the assignment does not operate on the property of the recipient. Moreover, this assignment allows the state to follow the federal directive to pursue third parties that may be liable for the costs of medical care. Although the state may not file a lien, the assignment does give the state the ability to pursue the third parties directly.

The foregoing analysis convinces us that there is no need to engage in an arduous or belabored statutory construction to harmonize the three federal statutes. Taking notice of the plain meaning of each is sufficient to achieve harmony. The anti-lien provision protects the personal property of a medical assistance recipient—here, Hoff's cause of action—from a state's effort to recover for medical expenses. The assignment transfers to the state the recipient's right to recover medical expenses, and therefore the ability to pursue directly potentially liable third parties for medical assistance expenses paid. The anti-lien provision protects all of a recipient's nonassigned rights to recover. The recovery provision, on the other hand, requires that the state pursue the third parties for medical expenses paid by the state, and the state does so under the assignment. The result is that the anti-lien provision operates in harmony with other federal Medicaid provisions and gives effect to all of the provisions.[15]

---

13. The dissent reads the third party recovery provision such that the final clause "for such health care items or services" refers to what the state has paid for and acts only as a limitation on the *amount* of the state's recovery, and not as a limitation on the character of the recovery. The dissent's interpretation is undercut by the plain language of the provision and is inconsistent with the rest of the federal Medicaid scheme. In particular, the reference in the third-party recovery provision to the state having "acquired the rights of such individual" can only refer to the federally required assignment which, by its plain meaning, is also limited to an assignment of payment for medical care. Thus, when interpreted according to its plain language and as consistent with the federal scheme, the only

fair reading of the third-party recovery provision limits the state's recovery to third-party payments *for medical or health care.*

14. Accordingly, the federally required assignment encompasses the right to payments from potentially liable tortfeasors as well as insurers or others liable for the payments but who are not liable for the underlying injuries.

15. The dissent asserts that we are interpreting the statute as a whole, yet reading out a federal requirement. What we have done is look to the plain meaning of the federal statutes to determine whether they operate in harmony with each other. The dissent argues that we have failed to adequately address the requirement that states recoup their expendi-

The three federal statutes reflect dual federal objectives: first, protection of the recipient's limited assets from encroachment by the state for reimbursement for medical expenses paid; second, requiring recovery and reimbursement from third parties liable for the recipient's medical expenses that were paid by Medicaid.[16] The statutes reflect these objectives by insulating the recipient's property from the state's recovery through the anti-lien provision, while at the same time requiring assignment to the state of the recipient's right to collect from third parties liable for the costs of medical care paid by the state and by requiring the state to exercise its recovery rights.[17]

It is critical to note that the federal scheme reflects the concept that the assigned right to recover for medical expenses is no longer the property of the medical assistance recipient and therefore the anti-lien provision does not prohibit a state from pursuing recovery under this assigned right. Essentially, at the time of an accident, the injured party acquires in tort one or more rights of action or claims against those responsible for the injuries. These rights of action or claims can be

---

tures out of proceeds from third parties, but by doing so misconstrues the federal requirement. As noted above, states are required to recover their expenditures from medical assistance recipients, but only from third party payments *for medical care.* 42 U.S.C. § 1396a(a)(25)(H) (referring specifically to "health care items or services"). The dissent correctly cites the "for medical care" language as contained in the statute, but then ignores this language in its analysis. We conclude that it is impossible to correctly construe the federal requirement without focusing on this language.

The dissent also states that our analysis loses sight of the presumption against preemption of state law. We acknowledge a presumption against preemption of state law. *See, e.g., Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.,* 507 U.S. 218, 224, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993). But we cannot completely disregard the plain meaning of a federal statute because of a presumption against the preemption of state laws. Were the opposite to be true, the presumption against preemption of state law would override our obligation to adhere to the plain meaning of federal statutes, federal preemption of state law under conflict preemption would never occur, and the category would be irrelevant. If plain meaning can be ignored, courts would almost always be able to find an interpretation that prevents preemption.

16. The dissent inordinately focuses on the third-party recovery aspect of the Medicaid system and fails to adequately address the federal purpose and objective of protecting a medical assistance recipient's property during his lifetime. In our analysis, we must confront all of the purposes and objectives of the federal Medicaid system.

17. The dissent opines that our interpretation of the assignment statute frustrates the purpose of the Medicaid program and would "eviscerate Congress's clearly expressed intention that these funds be repaid," quoting language from *Norwest Bank of North Dakota, N.A. v. Doth,* 159 F.3d 328, 333 (8th Cir. 1998). In doing so, the dissent exaggerates the impact of our opinion on the state's ability to recover. Further, in an effort to buttress its position, it takes *Doth* out of context. *Doth* addressed medical assistance recipients' ability to place third-party settlement proceeds in supplemental needs trusts (SNT) ahead of the state's medical assistance liens. Funds in SNTs remain inaccessible to the state until the recipient's death. *Doth,* 159 F.3d at 331–32. *Doth* dealt with a situation in which recipients were attempting to place the *entire* recovery from third-party tortfeasors into a SNT, whereas this case only defines the limits of the state's ability to recover. In *Doth,* the court was addressing a very different and more drastic limitation on states' ability to recover. Furthermore, *Doth* specifically declined to address the validity of the state's liens, and did not determine whether the liens were able to be satisfied out of the entire settlement, or only that part attributable to medical expenses. *Id.* at 334. Importantly, *Doth* did not mention the anti-lien provision at all.

likened to a "bundle of sticks." *See United States v. Ben–Hur*, 20 F.3d 313, 317–18 (7th Cir.1994) (stating that property rights are likened to "bundle of sticks," each stick separately alienable); *In re Nelson*, 92 B.R. 837, 842 (Bankr.D.Minn.1988) (reflecting the implicit concept that property rights are divisible). As a condition of receiving medical assistance from a state, a medical assistance recipient assigns to the state one stick from that bundle—the specific claim to recover medical expenses from those responsible for the injuries. At this point, the state becomes the sole owner of the claim against any third parties for medical expenses. But the recipient retains ownership of the remaining sticks in the bundle—that is to say, the claims for pain and suffering, emotional distress, disability, disfigurement, loss of earnings, and loss of earning capacity. To the extent that any settlement with the responsible third parties is for this larger bundle of sticks (the original tort action minus the claim for medical care), the settlement proceeds are the recipient's personal property, and as such are protected by the federal anti-lien provision.

The dissent expresses concern about our willingness to recognize these separate claims and cites a medical assistance eligibility case, *In re Welfare of K.S.*, as support for its analysis. In *K.S.*, we attempted to determine the availability of certain assets for purposes of medical assistance eligibility. 427 N.W.2d 653, 658–59 (Minn. 1988). Specifically, we addressed whether the purpose for which a tort settlement fund was received affected the fund's availability for medical assistance eligibility. *Id* at 659. We do not disagree with the holding in *K.S.*, but do not see its relevance to the case before us.[18] In *K.S.*, we concluded that the state medical assistance subrogation provision, Minn.Stat. § 256B.37, indicated a clear legislative intent that the availability of a settlement fund for medical assistance eligibility purposes does not depend on the purpose for which the settlement was received. *K.S.*, 427 N.W.2d at 659. We also noted that the medical assistance lien provision indicated a legislative intent to place the burden of medical assistance on the tortfeasor and therefore on the tort recovery. *Id.* at 660. However, because the issue before the court in *K.S.* was eligibility for medical assistance and not the validity of a medical assistance lien, we did not address the federal anti-lien provision and its impact on state medical assistance laws. As developed in detail below, the federal anti-lien provision is critical to the resolution of the case before us.

### 2. State Medical Assistance Lien

Having set forth the federal law, we must now juxtapose the federal anti-lien provision and Minnesota's medical assistance lien to determine whether compliance with both is impossible or whether the state law is an obstacle to accomplishment of the purposes of the federal Medicaid scheme. The state lien provision gives the state a lien for the cost of care "upon any and all causes of action" which accrue to the medical assistance recipient as a result of the injuries that necessitated the

---

**18.** We note the impact of our holding in *K.S.* may have been changed in light of the availability of a SNT. In 1993, Congress passed the Omnibus Budget Reconciliation Act of 1993, which provides that a SNT may be created for the benefit of a disabled individual if the assets of the trust are to be transferred to the state upon the death of such individual. 42 U.S.C. 1396p(d)(4) (1994). The assets of such a properly created SNT are not considered for purposes of determining eligibility for medical assistance. *Id.* Minnesota currently recognizes the validity of SNTs created under federal law. Minn.Stat. § 501B.89, subd. 3 (2000).

medical care. Minn.Stat. § 256B.042, subd. 1. But as previously noted, these causes of action or claims are the personal property of the medical assistance recipient. *See Royal Mineral Ass'n,* 132 Minn. at 236, 156 N.W. at 130; *see also Mattson,* 95 Minn. at 488, 104 N.W. at 448. Therefore, the state medical assistance lien provision appears to conflict with the federal anti-lien provision and should be subjected to a preemption analysis.

■ Under conflict preemption, federal law preempts state law when compliance with both is impossible or when the state statute is an obstacle to the purposes of the federal scheme. *See Fla. Lime & Avocado Growers,* 373 U.S. at 142–43, 83 S.Ct. 1210; *Hines,* 312 U.S. at 67, 61 S.Ct. 399. Here, the federal anti-lien statute prohibits placing a lien upon a medical assistance recipient's personal property before the recipient's death. This provision can coexist with the federal assignment provision because the assignment removes from the property of the recipient his claim for medical care. Yet the state's medical assistance lien provision allows a lien to be placed on a variety of claims that are still the recipient's personal property. This result is in direct conflict with the federal anti-lien provision. Therefore, we conclude that compliance with both provisions is not possible because the federal law prohibits exactly what the state law allows.

Having concluded that the state lien provision is in conflict with federal law, we are now presented with two options for the ultimate fate of the state law. One option is to hold that the state law is preempted entirely. However, preemption is disfavored, and a state law should be preempted only to the extent that it is in conflict with federal law. *See Weber v. Heaney,* 995 F.2d 872, 875 (8th Cir.1993); *Forster,* 437 N.W.2d at 658. But given the clear

and broad prohibition of the "no lien" language in the federal anti-lien provision, we are not able to ascertain an appropriate limiting construction to the state's medical assistance lien provision. Therefore, we hold that section 256B.042, Minnesota's medical assistance lien statute, is preempted to the extent that it allows a lien for medical assistance paid to be placed on a medical assistance recipient's cause of action before a recipient's death.

## II.

Having held that the state cannot place a lien on a medical assistance recipient's personal property on account of medical assistance paid before the recipient's death, we must determine whether the state can otherwise recover under the assignment obtained under section 256B.056, subd. 6, Minnesota's assignment statute. To make this determination, we must juxtapose federal Medicaid law and Minnesota's assignment statute to determine whether compliance with both is also impossible or whether the state law is an obstacle to accomplishment of the purposes of the federal Medicaid scheme.

The Minnesota assignment statute, like the federal assignment law, requires an assignment of the medical assistance recipient's rights to medical expenses. The specific assignment language reads as follows:

> The state agency shall require from any applicant or recipient of medical assistance the assignment of any rights to medical support and third party payments. * * * By signing an application for medical assistance, a person assigns to the department of human services all rights the person may have to medical support or payments for medical expenses from any other person or entity on their own or their dependent's behalf and agrees to cooperate with the state in

establishing paternity and obtaining third party payments.

Minn.Stat. § 256B.056, subd. 6. It also provides that an applicant must agree to apply *"all proceeds* received or receivable by the person * * * from any third person liable for the costs of medical care * * *." *Id.* (emphasis added).

■■■ In the "all proceeds" sentence, reading the clause "for the costs of medical care" to modify "any third person liable" appears to be the more conventional reading of the language of the statute; therefore, we will first proceed to analyze this interpretation of the language. If under this reading preemption is not required, our analysis of this provision will be complete. However, if we conclude that this reading requires preemption in whole or in part, we will then look further to determine whether the statute is susceptible to another interpretation that does not raise a constitutional defect. *See Hince v. O'Keefe,* 632 N.W.2d 577, 582 (Minn.2001) (explaining that we are under an obligation to interpret our statutes to avoid constitutional defects).

Under the foregoing construction of the statute, when "for the costs of medical care" is read to modify "any third person liable," "all proceeds" is not limited to payments received or receivable for medical care and includes *any* payments ("all proceeds") from third parties who are liable for medical care. Thus, the assignment provision appears to give the state an assignment for more than what the federal law mandates because the federal law only requires that states obtain an assignment of the medical assistance recipient's *right to recover medical expenses* from liable third parties. However, the state's ability to recover medical expenses paid is not limited to a recovery only from a recipient's right to recover for medical expenses. Therefore, it appears that the statute may

be broader than federal law and should be subjected to a preemption analysis.

While Minnesota's assignment provision appears broader than the federal requirement, this does not mean that the statute and federal law are in conflict per se. The federal assignment requirement appears to set a minimum requirement for what state plans for medical assistance must contain and for what recipients must assign, but there is no indication that the federal assignment requirement sets a maximum that states cannot exceed. Unlike the anti-lien provision, the assignment provision contains no explicit prohibition or restriction. So compliance with both the federal assignment requirement and the state assignment requirement is possible; the state provision just goes above and beyond what the federal provision absolutely requires. However, the breadth of the state assignment may implicate the second form of conflict preemption if it interferes with the purposes of the federal Medicaid scheme.

Under the state assignment provision, the state is not only assigned the recipient's right to payments for medical care, but is also assigned the rights to "all proceeds" from third parties liable for medical care. The implication of the "all proceeds" language is that the state has a right to *any* payment made to a medical assistance recipient by a third party liable for the recipient's medical care—including settlement proceeds from a cause of action exclusive of medical expenses. The rights to these other causes of action are not required to be assigned by the federal assignment provision, and as we have already concluded, these nonassigned rights to recover or claims *are* protected by the anti-lien provision. The state cannot place a lien on this property during the recipient's life because it is personal property of the recipient.

Despite the foregoing restriction, the state's broad assignment right allows the state to take by an assignment what is protected by the anti-lien provision. Allowing the state to expand the range of the required assignment to defeat the anti-lien provision interferes with the federal scheme. In essence, it circumvents the anti-lien provision and eliminates the efficacy of that provision's protection. The purpose of the anti-lien provision is to protect the recipient's limited assets, including nonassigned rights to recover, and the assignment statute frustrates this purpose. Therefore, we conclude that under the foregoing reading of Minnesota's assignment statute, the statute is broader than its federal counterpart and interferes with the purposes of the federal Medicaid scheme generally and the anti-lien provision in particular.

Accordingly, we conclude that under this construction the statute is preempted in part. To the extent that the state assignment provision gives the state rights to more than the recipient's claim for medical expenses, it should be preempted by federal law. However, to the extent that the state assignment mirrors the federal assignment provision and requires that medical assistance recipients assign to the state all rights to payment for medical care from third parties liable for the injuries that necessitated medical assistance, the state assignment provision should not be preempted.[19]

*Alternative Interpretation*

As noted earlier, we are under an obligation to interpret our statutes to avoid constitutional defects. *Hince*, 632 N.W.2d at 582. Therefore, if the state assignment provision is susceptible to an alternative interpretation that allows it to operate in harmony with the federal Medicaid scheme and not be preempted, we must apply that interpretation. Here, the state medical assistance assignment provision differs from the federal mandate in one important respect—the "all proceeds" sentence. It reads, "[t]o be eligible for medical assistance a person must have applied or must agree to apply all proceeds received or receivable by the person or the person's spouse from any third person liable for the costs of medical care for the person, the spouse, and children." Minn.Stat. § 256B.056, subd. 6. The "all proceeds" sentence is apparently a state innovation and not required by the federal law.[20]

Our first interpretation of this statute would give the state the right to all proceeds received from liable third parties. Recovery under this interpretation is not limited to proceeds for medical care. But this section is susceptible to an alternative interpretation. The clause "for the costs

---

19. The dissent implies that our decision impairs the right of a medical assistance recipient to transfer his/her causes of action by assignment. But this misses the point. We acknowledge that medical assistance recipients have the right and thus are *able* to assign any and all of their causes of action or claims to the state (or, for that matter, to anyone else). However, there is no *obligation* under federal law to assign more than a claim for medical care. The problem here is that the dissent's interpretation of the state assignment provision transforms a right to transfer into an obligation to transfer more than what the federal law requires. Such an expansive obligation runs headlong into the federal anti-lien provision.

20. Otherwise, the state assignment provision parallels the federal requirements of 42 U.S.C. §§ 1396a(a)(25)(H) and 1396k(a). To the extent that it appears to give rights against more than recovery for medical care, it is an innovation; to the extent that it has a retroactive effect—as an award of the proceeds (for medical care) that may have been paid out *before* a settlement—it does conform to section 1396a(a)(25)(H).

of medical care" can be read to modify either "all proceeds" or "from any third person liable."

■ If we interpret the statute such that "for the costs of medical care" modifies "all proceeds," we can avoid an interpretation that necessitates preempting part of the state statute. When we read the statute in this way, it gives the state no more rights against the recipient than the federal requirement.[21] Under this interpretation of the statute's language, the state has assignment rights to all proceeds *for medical care*, but does not have rights in any other part of a recovery. Because our canons of interpretation instruct us to interpret statutes to avoid constitutional problems, we conclude that "for the costs of medical care" modifies "all proceeds." Therefore, we hold that when a medical assistance recipient has a cause or causes of action against potentially liable third parties for his injuries, the medical assistance assignment statute grants to the state an assignment right to all claims for medical care, but it does not grant an assignment right to any other claims or the recovery therefrom.

This limited interpretation of the statute allows the federal scheme to function appropriately. The state assignment provision is now functionally equivalent to the federal assignment provision. The state has an assignment of rights limited to the right to medical expenses and may no longer pursue "all proceeds" from third parties. Effectively, the state is entitled to an assignment of the recipient's right to recover for medical expenses against all third parties that are potentially liable for the injuries that necessitated medical assistance.

### III.

The next question before this court is whether the statute granting the state a subrogation right is preempted by federal law.[22] In addition to asserting statutory lien rights, the state also asserts a subrogation right to the settlement proceeds under Minn.Stat. § 256B.37, subd. 1.[23] This provision gives the state a subrogation right "to the extent of the cost of medical care furnished" to any rights the medical assistance recipient may have under the cause of action "arising out of an occurrence that necessitated the payment of medical assistance." *Id.* The scope of the subrogation right is broader than the rights given to the state in the federal medical assistance assignment provision.

---

21. However, the "all proceeds" language may operate to give the state rights in any recovery made before the assignment—a retroactive effect. This goes beyond the requirement in the federal assignment provision, but it gives effect to the third-party recovery requirement in § 1396a(a)(25)(H).

22. Martin asserts that the state waived its subrogation claim because it was not timely filed. Upon review of the record, we conclude that the issue was properly raised before the district court. *See Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997) (explaining that Minnesota is a notice pleading state); *Anderson v. Rengachary,* 608 N.W.2d 843, 852 (Minn.2000) (Gilbert, J., concurring in part and dissenting in part).

23. In pertinent part, the subrogation statute provides:

> Upon furnishing medical assistance to any person who has * * * a cause of action arising out of an occurrence that necessitated the payment of medical assistance, the state agency * * * shall be subrogated, to the extent of the cost of medical care furnished, to any rights the person may have * * * under the cause of action.
> The right of subrogation created in this section includes all portions of the cause of action, notwithstanding any settlement allocation or apportionment that purports to dispose of portions of the cause of action not subject to subrogation.

Minn.Stat. § 256B.37, subd. 1.

The subrogation right is not limited to claims for medical expenses. In fact, the subrogation right specifically includes "all portions of the cause of action, notwithstanding any settlement allocation." *Id.* As we interpret the subrogation provision, it allows the state a subrogation right for the cost of care against any recovery on a cause of action arising out of the incident that necessitated medical assistance, even if the recovery also included claims other than for medical expenses.

The federal anti-lien provision does not explicitly prohibit states from asserting subrogation rights with respect to a medical assistance recipient's cause of action arising out of an occurrence that necessitated the payment of medical assistance. Therefore, the same is true here as with the assignment provision—compliance with both federal and state laws is not impossible per se. But as with the assignment provision, we have to determine whether allowing a subrogation right outside of the state's assigned right to medical expenses would be an obstacle to the purposes of the federal Medicaid scheme. *See Fla. Lime & Avocado Growers,* 373 U.S. at 142–43, 83 S.Ct. 1210; *Hines,* 312 U.S. at 67, 61 S.Ct. 399 (stating that state law is preempted if it is an obstacle to accomplishment of federal purpose).

■ Our preemption analysis of the state's subrogation right will be very similar to the analysis of the state's assignment provision because a subrogation right has the same practical effect as an assignment—it puts the state in the shoes of the medical assistance recipient with respect to the recipient's rights against third parties for medical expenses. *See Hermeling v. Minn. Fire & Cas. Co.,* 548 N.W.2d 270, 273 (Minn.1996) (explaining the distinction between subrogation and indemnity) (overruled on other grounds).

■ We have already concluded that the anti-lien provision prohibits a state from attempting to recover its medical assistance costs from the property of the recipient through a lien and that the state cannot require an assignment of more than the recipient's right to receive third-party payments *for medical care.* The federal scheme does permit a state to recover medical expenses paid by authorizing an assignment of those rights, but the anti-lien provision effectively prevents the state from recovering the costs of care directly from the recipient. Allowing the state to assert a subrogation right and thus get indirectly what it is prohibited from attaining directly would defeat the purpose of the federal anti-lien provision in the same manner as the broad assignment of rights discussed above. Pursuing a subrogation right allows an end-run around the protections of the anti-lien provision by using a subrogation right instead of a lien to take part of the recipient's personal property that is protected by the anti-lien provision. Essentially, for purposes of our preemption analysis, an assignment of rights to the state and the state's subrogation right are the same. Therefore, we hold that the state subrogation provision is preempted to the extent that it allows the state to assert a subrogation right against causes of action or settlements for other than medical expenses.

■ When the state actually obtains the assignment of rights to third-party payments for medical expenses, subrogation is no longer appropriate because the state is now the owner of the medical assistance recipient's claim and no longer needs to be subrogated. *See, e.g., Employers Mut. Cas. Co. v. A.C.C.T., Inc.,* 580 N.W.2d 490, 493 (Minn.1998) (explaining that subrogation does not give a subrogee any independent rights, but merely allows a subrogee to step into the shoes of the

subrogor). But subrogation may be appropriate in situations where medical assistance payments have begun before the assignment is made,[24] when a medical assistance recipient refuses to make an assignment, or when an assignment is not properly made. In those circumstances, the state will still be able to assert a subrogation right to the extent of medical assistance payments made, but only as to the recipient's right to recover on a claim for medical expenses.

## IV.

The state makes three additional arguments to supplement its main argument that the plain language of Minnesota's lien, assignment, and subrogation statutes does not conflict with federal law or the purposes behind the Medicaid provisions. These arguments are that the state's position is supported by (1) deference to HCFA's interpretation of the federal anti-lien provision, (2) decisions from other jurisdictions, specifically Washington and Utah, and (3) equitable considerations. None of these arguments are persuasive, and we will address each in turn.

### A. Deference to HCFA

The state argues that we must defer to HCFA's interpretation of the federal anti-lien provision. The state asserts that HCFA has decided that the anti-lien provision does not bar a state from imposing a lien on a medical assistance recipient's rights to recover for other than medical care. Deference to agency interpretation is called for, however, only when there is an ambiguity in the expression of congressional intent. *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter."); *see also United States v. La-*

*Bonte,* 520 U.S. 751, 762 n. 6, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997) (concluding no ambiguity, and thus no need to decide whether Sentencing Guidelines Commission is owed deference). We have already concluded that there is no ambiguity in the statement that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan * * *." 42 U.S.C. § 1396p(a)(1). Similarly, the federal assignment requirement and the third-party recovery provision are not ambiguous and interact smoothly with our interpretation of the anti-lien provision. Because the intent of Congress is clear, there is no need for deference to an agency interpretation on the grounds that the statute is ambiguous.

Even if we were to conclude that the federal assignment requirement and third-party recovery provision inject some ambiguity into federal law, agency deference is still not appropriate here. When an agency statement does not reflect formal rules or agency adjudications, yet attempts to address an ambiguity in the law, deference to the agency under *Chevron* is not appropriate. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (concluding that opinion letters, policy statements, agency manuals, and enforcement guidelines are not warranted *Chevron*-style deference). Such agency interpretations are only "entitled to respect * * * to the extent that those interpretations have the power to persuade." *Id.* (internal quotation marks omitted); *see also Wis. Dep't of Health and Family Servs. v. Blumer,* 534 U.S. 473, 122 S.Ct. 962, 976 (2002) ("The Secretary [of Health and Human Services']

---

**24.** Martin's medical assistance application and assignment of rights was not completed until approximately 18 months after medical assistance payments first began.

position [regarding Medicaid law] warrants respectful consideration.").

■ The state urges us to defer to various agency letters, directives, and approvals demonstrating the agency's interpretation of the anti-lien provision as not prohibiting a state from recovering on third-party actions for other than medical care. These materials include a "Best Practices Guide" that cites Minnesota's subrogation statute as "model legislation" and various letters from HCFA's administrators to state administrators and others stating that medical assistance liens are not prohibited under federal law. These agency materials are not accorded deference because they do not reflect formal rules or adjudications. *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655. And, although these materials are entitled to some respect and may be used to persuade this court, we are not persuaded by the interpretations contained in these materials.

The state has referenced two agency adjudications that, if relevant, would be entitled to deference under a *Chevron* analysis. The two adjudications were made by the Department of Health and Human Services Appeals Board (Board).[25] *Cal. Dep't of Health Servs.*, DAB No. 1504 (Dep't of Health & Human Servs. Jan. 5, 1995); *Wash. State Dep't of Soc. and Health Services*, DAB No. 1561 (Dep't of Health & Human Servs. Feb. 7, 1996). Both adjudications addressed

whether HCFA properly withheld federal funds from a state program based on the state's failure to recover a sufficient amount from settlements between recipients and third-party tortfeasors. In both the California and Washington adjudications, the Board stated that HCFA properly characterized recoveries from third parties first as payments for medical care. The Board reasoned that "[t]his characterization prevents manipulation of tort awards by recipients who seek to prevent the public from being reimbursed for the funds it has advanced for their medical care (e.g., by suing for pain and suffering or lost wages rather than for medical costs)." DAB No. 1561, p. 5.

■ We need not defer to these agency adjudications because they do not address the central issue presented here, which is whether the federal anti-lien provision preempts state laws that purport to allow states to impose liens on recovery of amounts not designated as payment for medical expenses. Indeed, the agency adjudications do not mention the federal anti-lien provision.[26]

We are nonetheless mindful of the concern expressed in the agency adjudications that Medicaid recipients could fashion a settlement to exclude payment for costs of medical care so as to avoid any obligation to reimburse the state and federal governments. But the state has options other than to ignore a clear provision in federal

---

**25.** If a state disagrees with HCFA's determinations regarding federal financial participation in a state medical assistance program, the dispute is resolved in an adjudication before the Department of Health and Human Services Departmental Appeals Board. 42 C.F.R. § 430.42(b); 45 C.F.R. §§ 16.1–.23.

**26.** As the dissent notes, agency interpretations are only entitled to *Chevron* deference if they are reasonable. *Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778. In the California adjudication, the Board acknowledges that the statute

only refers to an assignment of "payment for medical care." DAB No. 1504; *see also* DAB No. 1561 (relying on DAB No. 1504). However, the Board then concludes that "the statutory scheme as a whole contemplates that the actual recovery might be greater, and, if it is, that Medicaid should be paid first." *Id.* This broad analytical leap is such a significant departure from the plain language of the statute that we conclude it to be unreasonable and not entitled to deference under *Chevron*.

law that prohibits a lien from being imposed against the property of any individual on account of medical assistance paid. The state can protect its right to reimbursement by participating in the litigation so as to ensure recovery of medical costs paid. In this case, the state did not actively participate in the litigation until settlement, despite being a plaintiff on impleader. But the state did participate at the settlement and did release each defendant from any liability to the state for medical expenses. At this time, the state did establish its claim to part of the settlement proceeds—but in a dispute solely with Martin.

## B. Other Jurisdictions[27]

The state asserts its position is supported by decisions from Washington and Utah. However, in reaching their respective holdings, neither Washington nor Utah addressed the issue of preemption. In *Wilson v. State*, the Washington Supreme Court concluded that the federal anti-lien provision was irrelevant because the state placed a lien on the recovery itself, and therefore not on the "property" of the recipient. 142 Wash.2d 40, 10 P.3d 1061, 1065–66 (2000). Similarly, in two companion cases, the Utah Supreme Court concluded that the anti-lien provision was not implicated when a state lien was placed on a settlement recovery. *S.S. v. State*, 972 P.2d 439, 442 (Utah 1998); *Wallace v. Estate of Jackson*, 972 P.2d 446, 448 (Utah

1998). The Utah court concluded that "payments made by a third party do not legally become the property of the recipient until after a valid settlement which must include reimbursement to the State for Medicaid benefits." *Wallace*, 972 P.2d at 448 (citing *S.S.*, 972 P.2d at 442). Washington relied on Utah, which in turn relied on the New York case, *Cricchio v. Pennisi*, which also concluded that the lien on settlement proceeds attaches to the property of a third party. 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301, 306 (1997).

The New York court, and later the Washington and Utah courts, reached the conclusion that settlement proceeds were not the property of the medical assistance recipient. But when they reached this conclusion, they failed to unbundle the sticks that make up a personal injury action. These courts correctly recognize that the federally-required assignment of rights to third-party medical expense recoveries gives a state the right, up to the amount of the state's expenditures, to any recovery or settlement for that right to recover. To the extent that a settlement is for medical expenses, those proceeds are the property of the state by virtue of the required assignment. But these courts failed to recognize that a personal injury tort action against potentially liable third parties comprises more than a right to recover for medical expenses. The tort action includes claims for pain and suffer-

---

**27.** The dissent relies upon state supreme court cases from Utah, Washington, and New York, as well as a single case each from the Second and Eighth Circuits. The state cases are distinguished below and rejected. Additionally, neither federal court of appeals specifically addressed the federal anti-lien provision or considered preemption of state laws. Specifically, the Second Circuit addressed the "general rule that the state may not encumber a Medicaid recipient's property prior to death," but cited only a New York version of the anti-lien statute and relied upon a New York state-created exception. *Sullivan v. County of Suffolk*, 174 F.3d 282, 285 (2nd Cir.1999). Moreover, the Eighth Circuit did not address the issue before this court—the validity of state medical assistance liens and whether such liens were able to be satisfied out of the entire settlement, or only that part attributable to medical expenses. *Doth*, 159 F.3d at 334. Further, as previously noted, *Doth* did not mention the anti-lien provision at all. *Id.*

ing, emotional distress, loss of earnings, and other familiar tort claims. The part of any settlement attributable to these unassigned claims is the property of the medical assistance recipient during his life, and the state has no right to these claims under the assignment. So while the other states' courts are correct in their conclusions that a recovery for medical expenses is not the property of a medical assistance recipient, they ignore the part of the recovery or settlement for claims other than medical expenses. We are therefore unpersuaded by the analysis of the Washington and Utah courts on this issue.

Additionally, the cases from New York, Utah, and Washington cannot be relied upon because of other problems in their analysis. In *Cricchio*, the New York court apparently concluded that New York's statutory analogue to the federal anti-lien provision was not violated by the imposition of a state lien because the state statute created an exception for the lien, yet the court did not explain how this state-created exception could trump the federal anti-lien provision. *Cricchio*, 660 N.Y.S.2d 679, 683 N.E.2d at 304. But the state exception was not the basis for the court's holding; rather, the court relied upon the conclusion that the anti-lien provision was not violated because the lien attaches to the settlement proceeds which the court deemed to be the property of the third party. *Id.*, 660 N.Y.S.2d 679, 683 N.E.2d at 305.

The dissent and the aforementioned cases implicitly acknowledge that whether the cause of action or settlement proceeds are the property of the recipient determines the applicability and relevance of the anti-lien provision. Each determines that the federal anti-lien provision is irrelevant by concluding that the settlement proceeds are no longer the property of the recipient. But, by doing so, they fail to

grapple with the key issue that underlies our analysis. This key issue, in fact, is the property issue. Specifically, both the dissent and the cases cited gloss over why these causes of action are no longer the property of the medical assistance recipient. On the other hand, our analysis recognizes the limited nature of the required assignment. Therefore, after a full analysis, we conclude that the causes of action and claims for other than medical expenses—and settlement proceeds therefrom—are the property of the recipient and therefore the federal anti-lien provision is relevant.

C. *Equitable Considerations*

■ We are also mindful of the state's equitable argument that it needs to preserve and recover Medicaid assets. But our resolution of the issue before us does not eliminate the state's ability to recover medical expenses when third parties are liable. Rather, our conclusion leaves the federal scheme intact and the state retains the assignment of a medical assistance recipient's right to recover for medical expenses against potentially liable third parties. Indisputably, the state's rights are limited—they only extend to a recipient's right to recover for medical expenses. The state has no interest under the assignment in any of the recipient's recoveries from third parties for claims other than for medical expenses. But the state does not have to wait for the recipient to initiate an action. Under harmonized federal and state law, medical assistance recipients are required to assign to the state their rights to receive payment for medical expenses from any potentially liable third parties. This assignment enables the state to acquire the recipient's property rights to this particular claim and to take independent legal action, or, as in this case, to be joined as a party to the recipient's action. Thus, the state can take an active role as a

plaintiff in its own right and does not have to rely on the efforts of others to ensure a recovery of medical assistance expenses.[28] Therefore, even though the method of obtaining medical assistance reimbursement that the state seeks in this litigation is not available to it, the state has other alternatives available to recover medical expenses.[29]

The state uses Minnesota's guaranteed one-third recovery scheme to support its position. But the same rationale that would allow a medical assistance recipient to receive a guaranteed one-third recovery also would allow the state to take away that guarantee and leave the recipient with nothing until the state had been paid back in full. Thus, by emphasizing the reasonableness of its position, the state fails to acknowledge the logical consequences of its argument.

We also note that the dissent fails to consider that as a logical consequence of its reasoning, Minnesota's participation in the Medicaid program may be jeopardized. The current mechanism in section 256B.042, subd. 5, allowing a one-third guaranteed recovery to a plaintiff/recipient is much the same as the systems in California and Washington that were criticized by the Department of Health and Human Services' Departmental Appeals Board (Board) because specified percentages or amounts of third-party recoveries were given back to recipients. *See* Part IV, A, *supra.* Under a pure application of the Board's analysis as adopted by the dissent, Minnesota would be unable to guarantee any recovery to the recipient, because the Medicaid expenses must first be taken from any recovery, regardless of its "label." Thus, even under the dissent's analysis, Minnesota's third-party recovery system is in jeopardy.

Our decision also does justice to Hoff and other medical assistance recipients. The state has paid for Hoff's medical expenses and should be entitled to reimbursement when a third party is liable for those expenses. But, in the words of now Chief Justice Gerry L. Alexander of the Washington Supreme Court, "the fund should be replenished only from amounts that a Medicaid recipient receives as reimbursement for elements of damage for which the State has assumed responsibility." *Wilson,* 10 P.3d at 1070 (Alexander, J., dissenting). Here, the state attempts to recover for medical expenses from a settlement for a cause of action that in-

---

**28.** It is important to remember that this case is not about the amount of recovery, but rather the method of recovery. Contrary to the implication of the dissent that our holding drastically curtails the state's ability to recover, the state's active participation in recovery efforts may in some cases actually increase its ultimate recovery. Under Minn.Stat. § 256B.042, subd. 5, the state is limited to a two-thirds recovery under the medical assistance lien, even if the only claim is for recovery of medical expenses. Under our holding, the state has no such limitation on the *amount* of its recovery. Rather, the state is entitled to recover the full amount of the assigned claim for medical expenses due from potentially liable third parties.

**29.** Contrary to the dissent's assertion, the state will not be "shackled" from recovering its medical assistance expenditures unless the recipient designates a part of a settlement for medical expenses. The state will not be forced to rely on the recipient's "labeling" of settlement amounts. Rather, as noted above, the state has its own independently owned claim for medical expenses against potentially liable third parties. With such a claim, the state must take appropriate steps with respect to its assigned claim for medical expenses, whether that is initiating a lawsuit, participating in a lawsuit initiated by the recipient, or taking part in settlement negotiations. Here, the state is only entitled to a part of the settlement proceeds because it released the third parties from further liability, relying solely on its lien and subrogation rights.

cluded pain and suffering, loss of earnings, loss of earning potential, and disfigurement—none of which is compensated by the state through medical assistance. These claims belong to Hoff alone, and may provide some relief or an increase in quality of life that is not possible through medical care.

## V.

We must now apply these holdings to the specific facts of this case. At the time of the accident, Hoff acquired a "bundle of sticks," which represented all of his potential rights to recover against those responsible for his injuries. As a condition of receiving medical assistance from the state, Martin, on Hoff's behalf, assigned to the state one stick from that bundle—Hoff's specific right to recover medical expenses from those responsible for Hoff's injuries.[30] At that point, the state became the sole owner of Hoff's right to recover against any third parties for medical expenses. But Hoff retained ownership of the remaining sticks in the bundle—that is to say, his right to recover for pain and suffering, emotional distress, disability, disfigurement, loss of earnings, and loss of earning capacity. To the extent that Martin's settlement with the defendants was for this larger bundle of sticks (the original tort action minus the right to recover for medical care), the proceeds are Hoff's personal property, and as such are protected by the federal anti-lien provision.[31]

It is unclear from the record what claims or rights to recover were part of the settlements. Martin, in her memoranda of law to the district court and in her briefing on appeal, erroneously characterizes the nature of the settlements as only for Hoff's claims and not for the state's claim pleaded by Martin for the state as plaintiff on impleader (i.e., the state's assigned claim for medical expenses). The settlement agreement with the city specifically incorporated the amended complaint by reference and purported to encompass all claims stated in the amended complaint, which included Hoff's claim for medical expenses and the separately pleaded claim for medical expenses paid by the state. The settlement agreements with the township and Tlougan's estate were not as comprehensive as the agreement with the city and did not contain similar language that clearly encompassed all claims in the amended complaint. This omission calls into question whether the state's claim pleaded by Martin was included in the settlement with the township and Tlougan's estate. But these settlement agreements do contain sufficient language indicating that the settlement was

---

**30.** The assignment in Martin's medical assistance application reads as follows:

As a condition of eligibility for medical assistance, I assign to the State of Minnesota any rights available to me under automobile or private health care coverage and any rights to payment for medical care from any third party for myself or my dependents. I agree to cooperate with the State in any legal action brought against a third party for payment of medical expenses or subsistence.

**31.** In the workers' compensation area, we have long recognized a compensation recipient's ability to settle third-party claims for bodily injury and exclude from those settlements claims or damages not recoverable under workers' compensation, so long as there is notice to the employer or carrier. *See, e.g., Naig v. Bloomington Sanitation,* 258 N.W.2d 891, 894 (Minn.1977); *Lang v. William Bros. Boiler & Mfg. Co.,* 250 Minn. 521, 531, 85 N.W.2d 412, 419 (1957);. As we see no relevant distinction for our analysis, we also recognize the divisibility of a medical assistance recipient's claims against a third party into claims for medical expenses (assigned to the state) and claims for other damages (owned by the recipient).

in satisfaction of the state's claims, although this language is not as straightforward as that in the settlement agreement with the city. Therefore, based upon our reading of the record below, we conclude that the settlements with defendants included and released all claims in the amended complaint, including the state's claim for medical expenses.

■ The state initially received an assignment of Hoff's rights to recover for medical expenses against any potentially liable third parties, including defendants, but as part of the settlements the state released defendants from all further liability. Because of the assignment made in the medical assistance application and by virtue of the state's claim pleaded by Martin on impleader, the state's assigned claim for medical expenses was necessarily a part of the settlements. The result of the settlements and the releases is that the state's recovery of expenses from the defendants for Hoff's medical care is now limited to the settlement proceeds. Therefore, the state is entitled to that part of the settlements that represents a recovery on its claim for medical expenses.

We are not able to determine from the record what part of the settlement proceeds is attributable to Hoff's nonassigned personal injury claims and what part is attributable to the state's separately owned right to recover medical expenses. In fact, it appears that the district court did not make such a determination. Accordingly, the district court's grant of Martin's motion to dismiss the state's claim to any of the settlement proceeds was in error. The court's conclusion that the settlement proceeds were Hoff's sole and exclusive property is not supported by the record, and therefore we must remand to the district court for further proceedings and clarification on the distribution of the settlement proceeds between Hoff's

claims and the state's claim. Ultimately, that part of the settlement proceeds attributable to payment for medical expenses belongs to the state under the assignment; the remainder of the proceeds belongs to Hoff.

On remand, the district court must specifically consider that the state's claim was part of the settlements and must specifically allocate the settlement proceeds among Hoff's nonassigned personal injury claims (excluding any recovery for medical care or expenses) and the state's separately owned claim for medical expenses. Here, it is important to remember that this case involves a settlement, and as with all settlements, represents a compromise of the parties' claims and damages. Had this case gone to trial, a jury would have been required to allocate the damages among the component claims. This court-approved settlement is no different and should be similarly allocated by the court in recognition of the nature of the settlement as a compromise. Once the court has made that allocation, that part of the settlement proceeds which represents payment for Hoff's medical expenses paid by the state must be awarded to the state; all other settlement proceeds belong to Hoff.

Reversed and remanded.

RUSSELL A. ANDERSON, Justice (dissenting).

I respectfully dissent. At the time Martin settled the personal injury cause of action against multiple defendants on behalf of her disabled son, the state, at her request, had expended over $600,000 towards his medical treatment. The medical treatment and the payments of public money for that treatment continued. Yet the effect of the majority's holding is that the state should not be able to recover on its lien for reimbursement of even a portion of the public money expended for

medical treatment. Given the state's significant expenditure on Hoff's behalf, the settlement funds at issue here belong to and should be returned to the public to the extent necessary to partially reimburse Medicaid.

The majority's holding is contrary to the purposes of the federal Medicaid law. The majority purports to construe the federal statute as a whole and interpret the federal anti-lien provision in light of the surrounding sections, but ultimately fails to adequately address the federal requirement that states recoup their expenditures out of proceeds from liable third parties. In addition, despite the contrary results reached in every other court that has considered the question presented in this case, the majority fails to acknowledge even an ambiguity that would allow it to defer to the federal agency charged with day-to-day administration of this complex statute. Focusing on the anti-lien provision, the court allows parties to subvert the principle that Medicaid should be the payor of last resort and jeopardizes the state's recovery of any of the significant funds extended for payment of medical expenses on behalf of Medicaid beneficiaries.

Although the federal anti-lien provision is broad, we must read related statutes *in pari materia*, keeping in mind the purposes of the entire federal scheme and the strong presumption against preemption of state law. *See Erlenbaugh v. United States*, 409 U.S. 239, 243–44, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972); *Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655, 658 (Minn.1989). In my view, the majority has lost sight of these important principles. Although appellant had a property right in her cause of action against the third party, she disposed of this property right to the extent of medical expenses paid when in her application for medical assistance benefits she agreed to apply *all* proceeds from a liable third party and when she assigned to the state *any* rights to third-party payments. *See* Minn.Stat. § 256B.056, subd. 6 (2000). The right to dispose of property has long been considered an inherent aspect of property ownership, *see Congdon v. Congdon*, 160 Minn. 343, 363, 200 N.W. 76, 83 (1924), and nothing in the federal or state Medicaid law, including the anti-lien provision, suggests the right to dispose of a cause of action through assignment to the state is impaired.

Once that broad assignment was made, the anti-lien provision was no longer operative because the recipient's causes of action (to the extent of the state's expenditures) were no longer his property,[1] and the conflict between state and federal law the majority finds is irrelevant. By looking first and foremost at the anti-lien provision instead of construing all provisions together, the majority overlooks a construction of the statute that avoids preemption problems.

This construction is consistent with the third-party recovery provisions requiring states to recover the full amounts of their expenditures under Medicaid. The federal statutes prohibit a lien on the recipient's property during the recipient's lifetime, but at the same time require the recipient to give the state, "*to the extent that payment has been made under the State plan* * * * the rights of such individual to pay-

---

1. The majority claims this analysis "misses the point." However, it is the same analysis that the majority applies. That is, I agree with the majority that the medical assistance recipient has assigned *something*, on which the anti-lien provision does not operate be- cause once assigned the cause of action is no longer the property of the recipient. I differ with the majority with respect to the *scope* of what has been assigned, not with respect to whether the assignment reflects a right or an obligation.

ment by any other party for such health care items or services." 42 U.S.C. § 1396a(a)(25)(H) (Supp. V 1999) (emphasis added). Under federal law, "the State is considered to have acquired the rights of such individual to payment by any other party for * * * health care items or services * * *." *Id.* The federal mandatory assignment provision requires states to enact laws that require recipients to assign "any rights * * * to support * * * and to payment for medical care from any third party." 42 U.S.C. § 1396k(a) (1994).

The majority construes the third-party recovery provision as limited to the recipient's right to recover payment for medical expenses. However, the statute requires a state to have in place laws:

> that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.

42 U.S.C. § 1396a(a)(25)(H). A fair reading of the statute indicates that "such health care items or services" in the last clause refers to what the state has paid for, not what the recipient might recover through a settlement. Congress' intent is to limit the recovery only "to the extent that payment has been made under the State plan," not to amounts out of a third-party settlement that the recipient agrees to label payment for medical expenses.

Accordingly, the state's assignment provision requires that the recipient apply or agree to apply *all proceeds* received or receivable" from any third party liable for the costs of the medical care, and that the applicant assign to the state "any rights to medical support *and* third party payments." Minn.Stat. § 256B.056, subd. 6 (2000) (emphasis added). This statute conforms with federal statutory requirements that state laws require a recipient to assign rights to the state for medical payment and that the laws give states the right to those payments to the extent that payment has been made under the state plan. 42 U.S.C. §§ 1396a(a)(25)(H) and 1396k(a). With respect to the state assignment provision, the state law does not conflict with federal law, but advances the purposes and objectives of the federal law.

Other state courts attempting to harmonize the federal anti-lien provision and the state's right to recover from third parties have applied this reasoning. In *Wallace v. Estate of Jackson*, 972 P.2d 446 (Utah 1998), *cert. denied, McNeil v. Utah, Medicaid Section*, 528 U.S. 810, 120 S.Ct. 42, 145 L.Ed.2d 38 (1999), the Utah Supreme Court held that payments made by a third party do not legally become the property of the recipient until after settlement " 'because third party settlement proceeds have been specified by the recipient as belonging to the State Medicaid Agency as a precondition of the recipient's eligibility.' " *Id.* at 448 (quoting state's brief). The Utah court noted that the anti-lien provision has coexisted for many years with the requirement that states seek reimbursement from third parties who are legally liable for the medical payments, and noted that harmony between these provisions can be achieved if the assigned rights are not considered part of the recipient's property. *Id.*

Likewise, in *Wilson v. State*, 142 Wash.2d 40, 10 P.3d 1061, 1064–65 (2000), the Washington Supreme Court held that all settlement proceeds belong to the state because they were assigned as such. The

court stated, "due to the lien being placed on the settlement prior to it becoming the property of the Medicaid recipient, the [anti-lien provision] is irrelevant." *Wilson,* 10 P.3d at 1065 n. 2; *see also Cricchio v. Pennisi,* 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301, 305 (1997) (reasoning that because the recipient has assigned rights to the state to recover medical expenses from a third party, and the state is subrogated to the recipient's rights, the settlement proceeds are the property of the third party which are owed to the state). Thus, the Washington and Utah Supreme Courts treat all third-party settlement proceeds in the same fashion that the majority treats only third-party payments for medical expenses. Presented with the identical issue as is presented here, the Washington court concluded that, "the state is not limited to recovery from only that portion of the settlement specifically allocated to medical expenses. The federal statute states recovery is to the extent of payment made by the state for health care items or services." 10 P.3d at 1066.[2]

Likewise, federal courts have not considered the federal anti-lien provision to bar states from pursuing settlement proceeds to satisfy a lien based on the state assignment and subrogation rights. *Sullivan v. County of Suffolk,* 174 F.3d 282, 286 (2d Cir.1999) (holding that, based on the assignment and subrogation scheme, the state may first satisfy its lien before the settlement proceeds are placed in a supplemental needs trust for the recipient); *Norwest Bank of N.D., N.A. v. Doth,* 159 F.3d 328, 333–34 (8th Cir.1998) (holding that the state may satisfy its lien from settlement proceeds before funds are placed in a special needs trust but declining to rule on the effect of the anti-lien provision).[3] At a minimum, what the majority finds to be patently clear has eluded the Second and Eighth Circuits and the highest courts of three states, every court that has considered the issue.

Instead the majority here attempts to harmonize the federal statutes by limiting the effect of the assignment provision to payments for medical expenses. This construction frustrates the purpose of the Medicaid program, however. As the Eighth Circuit held, allowing Medicaid recipients to avoid reimbursing the state for amounts paid on the recipient's behalf would "eviscerate Congress's clearly expressed intention that these funds be repaid and negate the Social Security Act's

---

**2.** The majority accuses the highest courts of two sister states of failing "to grapple with the key issue" by concluding that the settlement proceeds are no longer the property of the recipient. Again, this is the same *method* by which the majority gives effect to the assignment provision, however. Like the Utah and Washington high courts, the majority also considers the assigned causes of action to not be the property of the recipient, but simply concludes that the assignment is more limited (to medical expenses) than the assignment as interpreted by the Utah and Washington Supreme Courts.

**3.** The majority claims that *Doth* is here taken out of its context, which involves the placement of an entire recovery from third party tortfeasors in a special or supplemental needs trust (SNT) so as to avoid the state's lien.

The distinction the majority makes between shielding an entire recovery (not allowed) and shielding only part of a recovery (apparently allowable) eludes me. However, other than using the vehicle of a SNT, shielding the entire recovery is exactly what Martin seeks to do here. She claims she is entitled to the full $220,000 from the third party tortfeasor.

While the majority and I both acknowledge that *Doth* did not deal expressly with the anti-lien statute, the court in *Doth* did expressly reject a construction of the SNT statute that would "eviscerate Congress's clearly expressed intention that these funds be repaid and negate the Social Security Act's comprehensive scheme permitting states to place these liens." 159 F.3d at 333 (internal quotation marks omitted).

comprehensive scheme permitting states to place these liens." *Doth*, 159 F.3d at 333 (internal quotation marks omitted). Thus, while the anti-lien provision is broadly written, equally clear from the entire context of federal Medicaid law is the principle that the state must be able to recoup what it has spent on medical care for Medicaid recipients.

Congress' apparent intent is to replenish and preserve Medicaid funds, providing support only when no other resources are available. Consolidated Omnibus Budget Reconciliation Act, H.R. Conf. Rep. No. 99–453, at 542 (1985); *Wilson*, 10 P.3d at 1064. Federal statutes accomplish this policy by requiring that a recipient assign rights of recovery to the extent of a third party's liability and that states retain the amount collected under the assignment to first reimburse Medicaid. 42 U.S.C. § 1396k (1994). To allow recipients to shield from recovery by the state amounts labeled "pain and suffering" or other elements of damage conflicts with the clear congressional intent that Medicaid be the payor of last resort, and that the state be able to recoup its expenditures from funds to which the beneficiary was entitled before the assignment.[4]

The majority's willingness to parse out the "sticks" of Hoff's settlement is also inconsistent with our previous treatment of tort settlements as they relate to eligibility for Medicaid. In *In re Welfare of K.S.*, 427 N.W.2d 653 (Minn.1988), we addressed whether a tort settlement was an available asset for purposes of determining eligibility for medical assistance. In that case an amicus curiae advocated a construction of the term "available assets" that would allow only that portion of a tort settlement intended to compensate the beneficiary for future medical expenses to be considered available, leaving compensation for pain and suffering or other claims not available. *Id.* at 659. We noted that the state's subrogation right extends to "all portions of the cause of action, 'notwithstanding any settlement * * * or apportionment that purports to dispose of portions of the cause of action not subject to subrogation.'" *Id.* (quoting Minn.Stat. § 256.37, subd. 1). In *K.S.*, we found this statute demonstrated a clear legislative intent that the purpose for which a settlement was received, whether for medical expenses or pain and suffering, did not determine the availability of those funds for purposes of eligibility for medical assistance. 427 N.W.2d at 659. Today the majority makes the directly opposite conclusion, by holding that settlement funds *must* be parsed out according to purpose and the state's right to recover its expenses is limited to those labeled as for medical costs.

Despite the fact that the highest courts of two states reached the opposite conclusion than that reached by the majority, and despite the purposes of the Medicaid law to allow the states to recover their expenditures, and despite our previous rejection of parsing out portions of a settlement fund depending on the purpose for which it was received, the majority refuses to acknowledge even an ambiguity with respect to the anti-lien provision and the third-party recovery provisions. These provisions create at least an ambiguity with respect to the reach of the anti-lien provision, which should compel us to acknowledge the rulings of the federal agency charged with administering this complex statute. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694

---

4. The majority claims that this analysis fails to consider the objective of protecting a medical assistance recipient's property during his lifetime. As explained herein, the anti-lien provision operates to give effect to this purpose for nonassigned property.

(1984) (holding that if a court finds ambiguity in the federal statute, it must defer to the administrating agency's interpretation if that interpretation is reasonable.)

The two adjudications[5] referenced by the majority are entitled to deference, as they reflect the agency's interpretation of the scope of the assignment and lien provisions. In the California decision, the Board upheld HCFA's interpretation of Medicaid statutes as requiring full Medicaid reimbursement before the recipient may collect any third-party settlement proceeds. *Cal. Dep't of Health Servs.*, DAB No. 1504 (Dep't of Health & Human Servs. Jan. 5, 1995). HCFA thereby disapproved of California's practice of allowing recipients to retain portions of third-party settlements that did not represent payment for medical care. The Board stated:

> HCFA's position is directly supported by these provisions of the Act. Recipients, as a condition of eligibility, must assign their rights to payment for medical care. States are then charged with the responsibility of seeking third party recovery pursuant to such assignments. States are further required to seek as much reimbursement as possible, i.e., to

the extent of the third party's liability. Finally, when a recovery is made, the Act sets forth a distribution scheme which requires the Medicaid program to be reimbursed prior to distributing any funds to the recipient. While section 1912(a) refers to assignment only of "payment for medical care," the statutory scheme as a whole contemplates that the actual recovery might be greater and, if it is, that Medicaid should be paid first.

DAB No. 1504, p. 4.

The Washington adjudication involved a state law that allowed the state to reduce the amount of its lien if the settlement amount was not sufficient to pay all medical expenses and other types of damages. *Wash. State Dep't of Soc. & Health Servs.*, DAB No. 1561 (Dep't of Health & Human Servs. Feb. 7, 1996). HCFA maintained that, under the mandatory assignment provision, Medicaid must be reimbursed in full before the recipient receives any settlement proceeds. The Board concluded that HCFA reasonably characterized third-party recovery proceeds first as payments for medical care, stating, "[i]n cases where a third party has caused the need for medi-

---

**5.** I agree with the majority that agency letters, directives and approvals are not entitled to full deference because they do not reflect formal rules or adjudications. However, as the United States Supreme Court has recently made clear, *Chevron* did not eliminate a court's ability to give some lesser form of deference to agency interpretations appearing in other forms, "given the 'specialized experience and broader investigations and information' available to the agency." *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 2167, 150 L.Ed.2d 292 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). The agency pronouncement may be due a "respect proportional to its 'power to persuade'." *Mead*, 533 U.S. at 220, 121 S.Ct. at 2167 (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161).

Of the various materials respondent directs us to, one memorandum from HCFA adequately describes the agency's interpretation of the anti-lien provision and is entitled to this lesser form of deference. A 1994 memorandum from the HCFA regional administrator to state Medicaid directors stated that liens are valid against a tortfeasor's property or against funds set aside to settle litigation that are not the recipient's property. Health Care Financing Administration Regional Identical Letter No. 94–134 (Sept.1994). The memo acknowledges the anti-lien provision and interprets it not to apply to recoveries from third-party tortfeasors because such funds are not the recipient's property. This agency interpretation is consistent with the rulings in *Wallace* and *Wilson*, and while not accorded full *Chevron* deference, we should consider it to have some persuasive force.

cal care and is liable for its payment, the Act looks to that third party to reimburse the public." DAB No. 1561, p. 5. The Board found that "[t]his characterization prevents manipulation of tort awards by recipients who seek to prevent the public from being reimbursed for the funds it has advanced for their medical care (e.g., by suing for pain and suffering or lost wages rather than for medical costs)." *Id.*[6]

We may not impose our own construction of the statute and are bound by the agency's interpretations established in adjudications if they are reasonable. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778. The agency's interpretations recognize the conflict between seeking reimbursement to the full extent of a third party's liability and the potentially limiting language of collecting "payments for medical care," just as conflict appears at first glance between the third-party recovery statutes and the anti-lien provision. Relying on the overall scheme of the Medicaid statutes and the policy that Medicaid is to be the payor of last resort, the agency resolves any perceived conflict by interpreting the statutes to require that recipients assign to the state rights to *any* payments from a liable third party for purposes of reimbursing Medicaid. Because appellant thereby disposed of any property right she had in a third-party recovery (to the extent of medical expenses paid), the anti-lien provision was not operative.

The majority dismisses the agency adjudications as not addressing the anti-lien provision. However, in each case the state argued that the assignment provision was limited to payment for medical care, and

that HCFA could not be reimbursed out of funds designated for other purposes, just as the majority holds. The agency soundly rejected that position in light of the very real possibility of manipulation of tort awards by recipients who seek to prevent the public from being reimbursed. Manipulation is exactly what the majority allows. Under the majority's interpretation of this statute, appellant would be able to characterize the entire $220,000 as payment for pain and suffering, despite the significant damages in the form of medical expenses that have been incurred on Hoff's behalf. As the agency explained:

> Contrary to what California argued, it is not unfair completely or substantially to deny Medicaid recipients access to their settlements. If Medicaid had not paid their medical expenses, these recipients would have both unrestricted access to their settlements and enormous medical debts to be paid from those settlements. As Medicaid recipients, they do not have such debts because the public has paid their medical expenses. Therefore, in cases where Medicaid has incurred the "debt" for recipients, it is not unfair for HCFA to require complete reimbursement from these liability funds.

DAB No. 1504, p. 8. In this case, appellant does not have over $600,000 in debt for medical expenses because the state Medicaid program has paid for Hoff's medical care. Yet under the majority's theory the state is shackled from recovering any of its expenditures unless appellant designates payments out of a settlement as for medical expenses instead of pain and suffering

---

6. Rather than adopt in their entirety these board adjudications as the majority claims, I cite these adjudications only for the agency's construction of the federal third-party recovery provision supporting its conclusion that the public should be repaid before a medicaid recipient enjoys the fruits of a settlement with

a third-party tortfeasor. Whether the agency would view Minnesota's one-third recovery provision in section 256B.042, subdivision 5 as depriving the federal Medicaid program of reimbursement dollars was not before the agency and is not now before the court.

or other elements of damages. Thus, the majority allows appellant's labeling of her items of damages to control whether the government can recoup its expenditures. In this case, the state will continue to pay for Troy Hoff's medical expenses while appellant has at her disposal not insignificant funds from liable third-party tortfeasors that might be used to satisfy that obligation. That result seems to me both absurd and contrary to congressional intent.

As the agency adjudications illustrate, the federal government is quick to penalize states for failure to recoup the amounts the federal government has expended on behalf of Medicaid recipients. The majority's ruling jeopardizes Minnesota's participation in the Medicaid program by making it nearly impossible for the state to recover from third parties responsible for injuries and disabilities of Medicaid recipients. At a minimum, the ruling will require the state to pursue third-party tortfeasors independently, notwithstanding the fact that the legislature has specifically allowed the attorney general to initiate and prosecute an independent action only if "no action has been brought" by the recipient. Minn.Stat. §§ 256.015, subd. 3, 256B.042, subd. 3 (2000). To that extent, the majority ruling is further contrary to legislative intent. Moreover, while the state can pursue third-party tortfeasors directly, nothing would prevent the recipient from intervening in that lawsuit and labeling a settlement pain and suffering so as to thwart the government's recovery. Again, that cannot be what congress or the legislature intended.

I would hold, consistent with the decisions of other courts interpreting the federal Medicaid laws, that the federal Medicaid law does not preempt state law in cases where the state seeks reimbursement for a Medicaid recipient's medical costs by placing a lien against third-party settlement proceeds.

STRINGER, Justice (dissenting).

I join in the dissent of Justice Russell A. Anderson.

LANCASTER, Justice (dissenting).

I join in the dissent of Justice Russell A. Anderson.